# Home Mutual Life Association of Pennsylvania, *versus* Gillespie.

1. Although an insured is held to the exact truth of his warranty, given as a condition of his recovery, yet if the words of the warranty, taken literally, are inconsistent with the main purpose of the instrument, they may be interpreted, if reasonably susceptible thereof, so as to carry out the intent of the parties and the object in view.

2. In his physical examination, an insured was asked: "Have you been subject to or had any of the following disorders or diseases: . . . . . open sores, lumps, or swellings of any kind," also whether he "ever had any malformation, illness or injury: "—*Held*, that the words "open sores," as here used, must be taken to mean sores which result from some functional derangement and not from wounds or accidental injuries: *Held further* that the injury or illness must be such, as in the judgment of the jury, was reasonably in contemplation of the parties in view of the matter under consideration.

3. Whether a certain injury, that an applicant for a policy of insurance had received, was of such a trifling nature as made it unworthy of mention or was such as could not have been contemplated by the parties, is a question for the jury.

May 5th, 1885.  Before PAXSON, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., GORDON, and TRUNKEY, JJ., absent.

ERROR to the Court of Common Pleas of *Lebanon county :* Of July Term 1884, No. 140.

Debt, by John W. Gillespie against the Home Mutual Life Association, on a policy of insurance for $2,000, issued by said company on the life of Anthony Gillespie.  Pleas, *nil debet*, payment, payment with leave, etc.

On the trial the following facts appeared: On January 9th, 1881, Anthony Gillespie made application to the defendant company for a policy of insurance upon his life to the amount of $2,000, for the benefit of his son John W. Gillespie, and on Jan. 11th such a policy was issued to him.  By the terms of the policy the application was made part of the contract of insurance, and each of the statements or answers to the questions proposed therein were declared to be material, warranted to be full and true, and to be the only statements upon which the contract of insurance was made.  One of the conditions of the policy further provided that if any statement made in the application for the policy was in any respect untrue, the consideration of the contract should be

deemed to have failed, and the Association should be without liability under it. In the application for the said insurance, Gillespie was asked the following question: "Have you been subject to, or had any of the following disorders or diseases: . . . . . diseases of the skin, cancer, erysipelas, *open sores*, lumps or swelling of any kind;" to which he answered, "nothing of that kind to my knowledge." He was also asked whether · he "ever had any malformation, illness, injury, or undergone any surgical operation;" to which he answered "No."

Anthony Gillespie died on May 23d, 1882, and after his death J. W. Gillespie made claim upon the defendant company for the amount of the policy. The company denied liability on the ground that the answers to the above questions on the application were untrue, and refused to pay, whereupon this suit was brought. From the evidence it appeared that Gillespie had been a member of "Co. B.," 184th Regiment P. V.; that, at the battle of Cold Harbor, he had been struck on the left leg by a piece of shell, that he was taken to a hospital in Washington, where he remained from June until the last of October, 1864. There was no record in the War Department of Gillespie having received any wound, but it appeared that he had been transferred in August, 1864, to the Veteran Reserve Corps, on account of debility and rheumatism. In 1865 Gillespie made an application for a pension, giving as a reason therefor, the wound received at Cold Harbor. In December, 1873, Gillespie presented himself to a United States examining surgeon, who testified that he had examined his leg and found "three indolent ulcers." On the other hand, Dr. Harpel, Gillespie's physician, testified that he attended Gillespie in 1880 for rheumatism, and he then examined his leg, that "there was no running sore; it was perfectly healed." The undertaker, who washed Gillespie's body after his death, testified that he "saw a scar on his left limb; . . . . . it looked to me as if it hadn't been any running sore for probably five or six years."

The defendant requested the court to instruct the jury, *inter alia*, as follows: 4. "The insured having answered that he had not had any open sore, if the jury believe that he had such open sore at any time before the application for insurance, the plaintiff cannot recover."

*Answer.* "This point is affirmed if it means a disorder or disease of open sores; otherwise it is refused."

5. "The insured having answered to the question—'Have you ever had any malformation, illness or injury, or undergone any surgical operation?'—'No,'—if the jury believe that the insured was wounded in the leg at the battle of Cold Harbor, as detailed by the witnesses and proved by his own

sworn application for pension, the plaintiff cannot recover in this action."

*Answer.* "Refused, unless the jury believe from the evidence that the wound received by the insured did him such injury as made it important that the Company should know of such wound before deciding whether or not to issue the policy; in this event the point is affirmed."

The court further instructed the jury, *inter alia*, as follows : " If the evidence satisfies you that this man had the disorder, or disease, of open sores, as distinct from a single attack, for instance, a sore at one time and afterwards another sore, not connected with the first and not proceeding in any way from the same cause—then it would not be within the terms of the policy—if he had not this disorder or disease ; and the answer would be a truthful one." . . . . .

" So I say to you, that if you find, as a matter of fact, from the evidence in this case, that the injury which this man undoubtedly received was of such a kind, producing such an effect upon his physical condition at the time this application was made, that it was important that the Company should know it,—that it would have had an effect upon their judgment in deciding whether or not to take that risk,—then it was his duty to disclose it, and having warranted as true that he never had an injury, then no recovery could be had upon this policy, because then the answer is not true, and there can be no recovery. If however, you find that the injury which he temporarily received did not affect his physical condition at the time this application was made for this policy, then we do not think that is the sort of injury meant by the question, and there might be a recovery in this case."

Verdict for the plaintiff for $2,155.30, and judgment thereon. Defendant took this writ of error, assigning for error *inter alia*, the answers to the above points and the portions of the charge quoted.

*Grant Weidman*, for plaintiff in error.—The contract provides that if the insured answered untruthfully there should be no liability. The insured answered that he had received no injury, and the Court in effect said that it was not a question for the jury as to whether an injury had been received, but whether the injury was of such a character as the defendant was entitled to know before taking the risk. This was manifest error : Etna, M. L. Ins. Co. *v.* France, 1 Otto, 510 ; Insurance Co. *v.* Arthur, 6 Casey, 331 ; Insurance Co. *v.* Huntzinger, 2 Out., 41.

The contract of the parties leaves no room for construction, no room for equity. The only question is, has the warranty

been kept. If a fact has been stated it must be literally true. As is said in Blooming Grove Mutual Fire Ins. Co. v. McAnerney, 6 Out. 335, wherever a man warrants a statement to be true he must be held to its absolute truth.

*W. H. M. Oram*, (*J. P. S. Gobin* with him), for defendant in error. Warranties, as well as all other contracts, must be examined by the light of common sense, and be governed by the general rule, that the language of all contracts must be taken according to the general and universal understanding of the meaning thereof, by the ordinary and unscientific mind : Bliss on Life Insurance, pp. 80, 109, 144, et seq.

The company are responsible for the language of the application, and one sore cannot constitute " the disease or disorder of open sores." The language must be restricted to its plain meaning, and cannot be enlarged to work a forfeiture of a policy : Burkhard v. Ins. Co., 6 Out., 262 ; Life Ins. Co. v. Drach, 5 Out., 278.

Whether a representation is false or not, is a question of fact for a jury, and, even if false, which is here denied, it is a question of fact for the jury whether it is fraudulent or material : Cumberland Valley M. P. Co. v. Mitchell, 12 Wr., 374. The courts lean in favor of a construction which makes a statement a representation rather than a warranty ; warranties are not extended by construction : Bliss on Life Ins., 80, 144, 145, et seq. 153, 170, 171, and 172. If the insured had not the disease or disorder mentioned in the question, then no affection which he might have had, no matter how near akin to it, how closely resembling or approximating the disease mentioned, would make his negative answer to the question a material misrepresentation : Price v. Mutual Life Ins. Co., 17 Minn., 497. May on Ins., 296, 297, 298 and 210. American Law Times, March, 1876, p. 43.

Mr. Justice CLARK delivered the opinion of the court, October 5th, 1885.

This is an action of debt on a policy of insurance, issued January 11th, 1881, by the Home Mutual Life Association, to John W. Gillespie, upon the life of his father, Anthony Gillespie, who died May 23d, 1882.

By the terms of the policy, the application was made part of the contract of insurance, and each of the statements, and the answers to the questions therein contained, are admitted to be material, and are warranted to be full and true, and to be the only statements upon which the contract of insurance was made. One of the conditions of the policy provided, that if any statement made in the application or in the

[Life Ass'n *v*. Gillespie.]

policy was in any respect untrue the consideration of the contract should be deemed to have failed, and the association should be free from all liability under it.

It is undoubtedly true that the validity of the contract depends upon the truth of the warranty. The materiality of the thing warranted to the risk, or the good or bad faith of the warrantor is of no consequence; the engagement of the policy holder is absolute, that the facts shall be as they are stated, when his rights under the policy attach: State Mut. Co. *v*. Arthur, 6 Casey, 331; Com'th Mut. Co. *v*. Huntzinger, 2 Out., 41; Mut. Aid Soc. *v*. White, 4 Out., 12; Blooming Grove Mut. Co. *v*. McAnerney, 6 Out., 335.

Whilst, however, the insured is held for the exact truth of his warranty as a condition of his recovery, it must first be ascertained, under the ordinary rules of construction, what the thing is that is warranted; and this being ascertained the insured is held to a full and literal performance of it. But the words of a warranty, or of a contract of insurance must receive a reasonable interpretation. When the words of any contract have a clear meaning, consistent with, and relevant to, its object and purpose, the intention of the parties, in the absence of fraud or mistake, cannot be shown to override this meaning. But if the words employed, in their literal or unrestricted sense, are inconsistent with the main and obvious purpose of the instrument, or are foreign to the purpose of its provisions, they may, if reasonably susceptible, receive such interpretation as accords with the object in view, and the clear intent of the parties. "If the natural interpretation, looking to the other provisions of the contract, and to its general object and scope, would lead to an absurd or unreasonable conclusion, as such a result cannot be presumed to have been within the intention of the parties, such interpretation must be abandoned, and that adopted, which will be more consistent with reason and probability:" May on Insurance 182. The contract, in such cases, will be construed liberally in favor of the object to be accomplished.

In his physical examination by the medical examiner, made a part of the application, the insured was interrogated, and replied as follows:—

4. "Have you been subject to, or had, any of the following disorders or diseases:" . . . . . "open sores, lumps, or swelling of any kind?" *Answer* :—"Nothing of that kind to my knowledge."

9. "Have you ever had any malformation, illness, or injury, or undergone any surgical operation?" *Answer* :—"No."

These questions, it must be admitted, are in the most general terms, and if they are to be so read and understood, they

[Life Ass'n v. Gillespie.]

are not only unreasonable but absurd. A slight cutting of the finger, with a penknife, may for a time produce both an open sore and a swelling; the mere indisposition arising from cold is an illness; the stubbing of a toe is an injury, and the most trivial operations with hand or knife may be said to be surgical. It would be impossible, for a person of mature years to remember, and absurd for the Association to inquire as to the common and trivial ailments or injuries he may have suffered from his earliest childhood, and it is unreasonable to suppose that these were in contemplation of the parties.

The form of the fourth question indicates, however, that the open sore or swelling intended is such as results from "disease or disorder," that is to say, such as result by defective action, from some functional derangement, and not from wounds or accidental injuries; and the court was right, we think, in saying that they were to some extent permanent or continuous, connected or recurrent. So, the illness or injury referred to, must be of such nature and importance as would reasonably fall within the line of inquiry proper to be pursued in such cases. We do not say that the illness or injury must be such as would be material to the risk, but such as in the judgment of the jury was reasonably in contemplation of the parties, in view of the nature of the matter under consideration. If the line of distinction is obscure, and difficult to draw, the fault is with the Association, for making it so. We do not believe that the assured was expected or required to remember and to recite in his application all of the trivial ailments of his life.

Whether the injury received by Anthony Gillespie, at Cold Harbor, from the bursting of a shell, was of such a trifling and unimportant nature as made it unworthy of mention, or was such an injury or open sore as could not have been contemplated, in the examination, was, under all the evidence in the cause, a question for the determination of the jury; and we think that question was, under the charge of the court, very fairly submitted.

                                        The judgment is affirmed.


GREEN, J. dissented.