Bertha Schwartz *v.* The Metropolitan Life Insurance Co., Appellant.

*Life insurance—Unsound condition of insured—Question for jury.*

The condition of a policy sued upon provided that liability was conditioned on the fact that insured was in sound health at the time same was issued. The insured died of diabetes and the case turned upon the inception of the disease prior to the insurance. *Held*, that in view of the vital difference in the testimony of defendant's medical witnesses the burden was not upon the court to settle the clinical differences, and that the question was for the jury.

Argued May 7, 1897. Appeal, No. 188, April T., 1897, by defendant, from judgment of C. P. No. 2, Allegheny County, Oct. Term, 1895, No. 662, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on policy of life insurance. Before GREER, P. J., of the 50th judicial district, specially presiding.

Plaintiff sought to recover on a policy of life insurance dated September, 18, 1893. On the trial evidence was produced tending to show that insurer was not only not in sound health at the date of the policy, but for more than one year prior to the date thereof was suffering from chronic incurable diabetes.

Verdict for plaintiff for $552.50. Defendant appealed.

*Error assigned* was refusal of binding instructions.

*W. K. Jennings*, with him *H. G. Wasson*, for appellant.—It is idle to submit evidence to the jury when they could justly find only in one way: Railroad Co. v. Bank, 123 U. S. 727. See also Eister v. Paul, 54 Pa. 196.

In the case of Schempp v. Fry, 165 Pa. 510, the Supreme Court reversed the lower court without a new venire, on the ground that the plaintiff's own witnesses testified against him on the pivotal question. In the case at bar, the plaintiff's own proof of death, which was uncontradicted by any evidence, established the fact of the unsound health of the insured at the

date of the policy, and this seems to have been overlooked by the court, or at least proper weight was not given to it.

*George P. Murray,* for appellee.—In Dietz v. Ins. Co., 168 Pa. 504, McCollum, J., delivering the opinion, says: "The condition of the health of the insured when the policy was issued was essentially and entirely a question of fact to be decided upon the evidence and involving the credibility of witness:" Campbell v. Ins. Co., 98 Mass. 381; Ins. Co. v. Trust Co., 112 U. S. 250; Ins. Co. v. Trefz, 104 U. S. 197.

Opinion by Orlady, J., July 23, 1897:

The husband of the plaintiff was insured in the defendant company, under a policy containing a stipulation as follows: "Provided, however, that no obligation is assumed by this company, prior to the date hereof, unless on such date the insured is living and in sound health," which furnishes the basis of the defense in this action. It was contended by the company that at the time of the issuance of the policy and for a considerable time prior thereto Peter Schwartz, the husband of Mrs. Bertha Schwartz had been suffering from diabetes; and proof was adduced on the trial to show that in 1891 Peter Schwartz consulted Dr. A. Blumberg, and was informed by him that he had diabetes; also that he consulted Dr. Charles Emmerling, who testified that in December of 1891, January, March, April and June of 1893, he was consulted by Peter Schwartz, and he arrived at the same conclusion as the other witness.

The statement of the attending physician of the insured gives as the chief or primary cause of death, diabetes militus; the dates for treatment of diabetes were from December, 1893, to April, 1895; that the contributory or secondary cause of death was the same; and that the duration of the disease was two years prior to death. The policy is dated September 18, 1893, and it was urged that "under all the evidence the verdict should be for the defendant." This was refused by the court, and in submitting the case to the jury, it was said: "The whole question turns on whether he had this trouble in September of that year." "Now this just comes down to an honest, square contract between the parties. The plaintiff must have complied with the requirements of the contract, or her husband before

her. The defendant has set up the defense that at the time this policy was taken this man was not in good health, that he had diabetes, and that therefore the policy is void so far as he is concerned. This is a perfectly good defense if it is made out, and it is for you to say whether or not it is made out."

In the analysis of the testimony of the eminent physicians called on the part of the defense, we are struck with the want of certainty, from their professional standpoint as to whether or not Peter Schwartz could or could not be, under their knowledge of his condition, in sound health, on the date of the policy. Dr. Blumberg testifies, viz: "Q. Doctor, if any man had diabetes in November and December of 1891, what would be your opinion as to the likelihood of its continuing until the 18th of September, 1893? A. Well I should say as a rule that diabetes is incurable, but there are cases where it has been cured. A man might have diabetes in 1891, and be in perfect health in 1893, and not have it. As a rule it is not curable, but there are cases that have been cured. Q. Well then, without deciding as to whether a case is incurable or not, would not information that he had the disease again in 1895, have any bearing upon your opinion as to the condition of his health in 1893? A. Even then it would not have any bearing, because he might have had sound health when he, in 1893, took out the policy, and then when he had it the disease might have come back again in 1895. Q. What kind of a disease is diabetes? A. It is a disease concerning which the medical profession is not entirely sure. It is caused by various causes. Some people claim that it is a disease of the brain; some that it is a disease of the liver. There are various kinds of diabetes, some get it from a disease of the liver and some from the blood. It depends on the degree, in some cases there is a slight amount of sugar in the urine and it don't amount to anything, and in other cases, where the sugar is more heavy they die. Q. Well, was a man likely to have diabetes and be healed, and then have it again, inside of the space of two or three years? A. Well it is not as a rule. As a rule they generally have it and die with it, but there are exceptions to those rules."

Doctor Emmerling testified that Peter Schwartz had diabetes on August 31, 1893. " He had an excessive discharge of the urine,—and he had too high a degree of sugar in the urine, a

specific gravity which was too high; lost flesh, and there was general disturbances, general debility; there was excessive thirst; he also had at times a slight cough. Q. Doctor, what was the possibility or probability of his recovering from the disease of diabetes within twenty days after you last saw him. A. Well, the probabilities were against the recovery from diabetes. The patient will improve, even in fatal cases, once in a while, and sugar is missing from the urine. For three or four weeks the sugar is missing but all the same the diabetes is there, because in fatal cases, there may be other causes brought on by diabetes, or the patient may make a recovery partially, under the treatment, but the relapse will follow. There are two forms of it, one superinduced chiefly by a diseased condition of the nervous system, and the other by the condition of the action of the liver. Q. Then you cannot state what it is? A. Not exactly. It is still in suspense what the real cause of diabetes is, but there are two forms of it, that is the hepatic form and the nervous form."

Doctor Emmerling says that persons of lean, spare physique die more quickly than robust, square persons, when affected with diabetes, while Doctor Blumberg says that as a rule fat people die quicker.

Doctor Stewart, the physician who made the examination of Peter Schwartz at the time the policy was issued, says that he made no examination of the urine, because in policies for this amount it was not required; that it was not waived because it was not necessary; it was not called for, and in answer to the direct question: "You did not see anything in this case which led you to believe that the urine should be examined? A. No, sir I did not. Q. After your examination of the man? A. No, sir. Q. If you had been asked then at that time whether or not he had diabetes, how would you have answered it? A. I would have said that I had no evidence of it at that time."

In view of the vital differences in the testimony of the defendant's witnesses, who are learned doctors in diagnosis and prognosis, and of the testimony of the examining physician of the company, who saw nothing at the time the policy was issued to indicate that Peter Schwartz was suffering from diabetes, or that an examination of his urine should be made to ascertain that fact; it would be asking too much to have the trial judge

reconcile these clinical differences and determine as a fact that Peter Schwartz was in sound or unsound health at the time this policy was issued, when the examining physicians expressed such grave professional doubts as to the certainty of either condition. "When doctors disagree, the soundest casuists doubt," and the case was properly submitted to the jury to determine the disputed fact.

The assignment of error is overruled and the judgment is affirmed.