# Katie Smith *v.* The Metropolitan Life Insurance Company, Appellant.

*Insurance—Life insurance—Statements in application as to health.*

Statements which are immaterial to the risk made in good faith, and in the belief that they are true, by an applicant for life insurance, but which are incorrect and untrue, will not avoid the policy.

Where a life insurance company defends to a suit on a policy on the ground that the insured made untrue statements as to the condition of his health at the time he applied for the insurance, the case is for the jury where there is a positive conflict in the evidence respecting the health of . the insured at the time the policy was issued.

Argued Oct. 14, 1897. Appeal, No. 92, Oct. T., 1897, by defendant, from judgment of C. P. Westmoreland Co., Nov. Term, 1896, No. 646, on verdict for plaintiff. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of life insurance.

The facts appear by the opinion of the Supreme Court.

Plaintiff's point and answer thereto were as follows :

1. Although it be true that the deceased was attended by Dr. Thomas in the spring of 1893, and neglected to so state in his application, and to this extent made a misstatement, if made in good faith, in and of itself does not avoid this policy, unless it now appears, from all the evidence, that it was a material one. This must be determined by the nature of the illness for which the patient was treated. If this illness was of a slight or temporary character, and did not affect the general health and vigor of the deceased after his recovery, and if you find he was actually in sound health at the date of the policy, then we instruct you that the failure to disclose that visit does not avoid the policy, and the plaintiff may, if otherwise entitled, recover. *Answer :* Affirmed. [1]

Defendant's points and answers thereto among others were as follows :

1. Under all the evidence the verdict should be for the defendant. *Answer :* Refused. [2]

5. The evidence being uncontradicted that the insured in his application denied the attendance of any physician except Dr. Donnelly prior to the date of the policy, and for any disease except typhoid fever, and that he was attended by Dr. J. G. Casey for heart disease from October 15, 1893, to and after the date of the policy, and by Dr. G. D. Thomas, of Millersburg, Butler county, for a paralytic stroke, the verdict of the jury should be for the defendant. *Answer:* This point if affirmed without qualification might be misleading. If you find from the evidence that the insured was attended by Dr. Thomas for a paralytic stroke your verdict ought to be for the defendant. If Dr. Casey attended the insured for heart disease your verdict should be for the defendant. If Dr. Casey was called in under other circumstances it is for you to say, as stated in the general charge, whether it was a material matter that was omitted in the answer of the insured—whether it was material to the risk or not. If material then your verdict should be for the defendant; if not material then you will inquire whether made in good faith or not. If made in good faith it would not vitiate the policy. [3]

Verdict and judgment for plaintiff for $1,030. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*W. K. Jennings* and *Paul H. Gaither*, with them *Cyrus E. Woods* and *H. G. Wasson*, for appellant.—The court under the evidence should have given binding instructions for defendant: Ryan v. Springfield Fire & Marine Ins. Co., 46 Wis. 671 ; Curry v. Com. Ins. Co., 10 Pick. 535 ; Hayward v. Mut. Ins. Co., 10 Cush. 444 ; Patten v. M. & F. Ins. Co., 38 N. H. 338; North America Ins. Co. v. Throop, 22 Mich. 146 ; Foot v. Ætna Ins. Co., 61 N. Y. 571 ; Graham v. Ins. Co., 87 N. Y. 69; Wyman v. Fidelity Mut. Life Ass'n, 17 Pa. C. C. 259 ; Hartman v. Keystone Ins. Co., 21 Pa. 466 ; Carson v. Ins. Co., 1 Pa. Superior Ct. 572 ; Mengel v. Ins. Co., 176 Pa. 280.

*James S. Moorhead*, with him *John B. Head*, for appellee.—It is for the jury to reconcile the difference in the testimony of medical experts, just as in other testimony, and to determine the

fact of sound or unsound health : Schwartz v. Metropolitan Life
Ins. Co., 40 W. N. C. 573; Dietz v. Metropolitan Ins. Co., 168
Pa. 504.

The questions of the good faith of the applicant and the mate-
riality of the statement were for the jury: Hermany v. Life
Ass'n, 151 Pa. 17; Carson v. Metropolitan Life Ins. Co., 1 Pa.
Superior Ct. 572; Ryan v. Ins. Co., 46 Wis. 671; Wyman v.
Life Ass'n, 17 Pa. C. C. 259.

OPINION BY MR. JUSTICE MCCOLLUM, January 3, 1898:

On the 30th of April, 1894, the defendant company issued a
policy of insurance in the sum of $1,000 on the life of Henry J.
Smith who died on September 5, 1896. The insurer now re-
fuses to pay the insurance money on two grounds : (1) The
insured was not in sound health " upon the date of the policy,"
and, (2) his answers to certain questions contained in his appli-
cation for insurance were untrue. The first ground on which
payment is resisted is sufficient, if established by competent evi-
dence, to bar a recovery, and so is the second ground, if the
answers complained of, although made in good faith by the
applicant, relate to some matter material to the risk. " State-
ments made by an applicant for life insurance, which are incor-
rect and untrue, will not avoid the policy, if they are immaterial
to the risk, and are made in good faith, and in the belief that
they are true ": Hermany v. Fidelity Mut. Life Ass'n, 151 Pa.
17; Act of June 23, 1885, P. L. 134.

In the case now under consideration there is a positive con-
flict in the evidence respecting the health of the insured at the
time of the issuance of the policy on his life. It is conceded
that he had a serious illness in October and November, 1893,
which lasted about seven weeks, and that during that time
Dr. D. H. Donnelly was the physician in charge of his case.
Donnelly testified that he then had " a dilated, weak heart,"
and when asked if he had it on April 30, 1894, he replied, " Why
certainly; that continued all the time; he never got well of
that; nobody can cure that." Dr. Casey, who was the junior
partner of Dr. Donnelly, was not called as a witness, but he
made a written statement which indicates that he occasionally
visited the patient in the absence of his senior, and thought he
had "neurasthenia and a weak heart." Dr. Thomas testified

that he became acquainted with the deceased during his residence in Millerstown, Butler county, and that he was called on April 8, 1893, to attend him; that from his examination of him he thought "there was a slight paralysis on one side;" that he made no note of the occurrence and that he depended entirely upon his memory for his account of it.

The witnesses to whose testimony we have referred are the witnesses relied on by the defendant company to establish its contention that the deceased was not in sound health when the policy was issued. It will be noticed that Dr. Donnelly, who was the only physician employed by him after his removal to Latrobe, never intimated to him or to any person dependent upon him, or interested in his welfare, that the condition of his heart disabled him from carrying on the business in which he was engaged. Surely if it was clear to his medical attendant that his disability was such as to preclude violent exertion and the carrying or lifting of heavy loads, he should and probably would have been advised of it. Be this as it may, there is direct evidence in the case which negatives Dr. Donnelly's view of the nature and cause of his illness in October, 1893. Dr. Mc-Conaughy, who was the company's medical examiner for several years and on whose examination the policy was issued, reported to his employer that the applicant had no "intermittance or irregularity or undue strength or weakness in heart action," and that his chances of life appeared to be first class. This report was sustained by his testimony in which he explained the nature and extent of his examination, and that as to the condition of the heart and lungs it was thorough. In addition to and in line with the testimony of McConaughy several witnesses who were acquainted with the deceased and his capacity for labor testified that he appeared to be a strong and healthy man. Surely, therefore, the question whether he was in sound health when he made his application for insurance was for the jury upon the evidence in the case: Dietz v. Metropolitan Ins. Co., 168 Pa. 504; Schwartz v. Metropolitan Ins. Co., 5 Pa. Superior Ct. 285; McGraw v. Same, 5 Pa. Superior Ct. 488.

Did the court err in not holding as matter of law that the policy was forfeited by the answers complained of? Certainly it was not for the court to say upon the evidence we have referred to that the assured had a dilated and weak heart when

the policy was issued, or that his statement that Donnelly attended him for typhoid fever in the fall of 1893 was untrue. This appears to have been the only serious illness he had previous to the issuance of the policy, and the evidence shows that he and his wife and neighbors understood it as he stated it, and supposed that he was treated accordingly. Did his answers to the seventh question in the application impose on the court the duty under the circumstances of declaring the policy forfeited? Certainly not if the answer was made in good faith and related to an immaterial matter. " The questions of materiality and good faith are ordinarily questions of fact, and therefore for the jury: " Hermany v. Life Association, supra. Whether there was bad faith or materiality in the omission to mention Drs. Casey and Thomas in the answer to the seventh question was, in our opinion, a matter to be determined by the jury upon the evidence. We have already seen what relation Dr. Casey sustained to the case which was admittedly in charge of Dr. Donnelly. At the occurrence of April 8, 1893, F. P. Smith, a brother of the deceased, was present, and he testified that the latter complained of the heat and of being dizzy, but that he was up and about the house half an hour afterwards. He also testified that he asked Dr. Thomas the next day what was the matter with his brother the day before, and he was told "it was a rush of blood to the head." Dr. Thomas testified that the deceased was about town a day or two after the occurrence. It may be noted also that neither Donnelly nor Casey said anything about the deceased having had paralysis until two years or more after the policy was issued.

The case was carefully and correctly tried in the court below, and the defendant company has no reason to complain of the result. The assignments are therefore overruled.

Judgment affirmed.