# Hiram Meyers, Appellant, v. Woodmen of the World.

*Insurance—Life insurance—Application—Untruthful answer as to health.*
In an action upon a life insurance policy where it appears that the insured stated in his application that he never had any serious illness, when the undisputed evidence showed that a few months before the date of the application he had been seriously ill with typhoid fever, the defendant is entitled to binding instructions.

Argued Oct. 10, 1899.  Appeal, No. 29, Oct. T., 1899, by plaintiff, from judgment of C. P. Armstrong Co., Dec. T., 1897, No. 190, on verdict for defendant.  Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, FELL and BROWN, JJ.  Affirmed.

Assumpsit on a policy of life insurance.  Before RAYBURN, P. J.

On March 31, 1897, Isaac R. Meyers made an application for life insurance in the defendant company, it being a beneficial association, chartered under the laws of Nebraska, and authorized to do business in the state of Pennsylvania.  He named his father, Hiram Meyers, the plaintiff, as his beneficiary.  His application was accepted, his entrance fees and advance dues were paid, and he was duly and regularly received as a member of Leechburg Camp, No. 11, of the Woodmen of the World, and on April 7, A. D. 1897, a beneficiary certificate, No. 1761, was issued to him, and he thereby became entitled to participate in the beneficiary fund to the amount of $3,000, payable at his death, to his father, Hiram Meyers.

Isaac R. Meyers died on April 20, 1897, while the said benefit certificate was in force.  Proofs of death were furnished, and the plaintiff fulfilled all the other conditions of said policy, but the defendant company refused to pay alleging that in the answer to the third interrogatory the applicant had falsely asserted that he never had any serious illness or undergone any surgical operation.

At the trial the court directed the jury to return a verdict for the defendant on the ground that the insured had made a false statement in his application as to his health.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for defendant.   Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*W. D. Patton*, for appellant.—The question as to whether or not a man was in good health is for the jury : Dietz v. Ins. Co., 168 Pa. 504; Union Mut. Life Ins. Co. v. Wilkinson, 13 Wall. 222; Knickerbocker Life Ins. Co. v. Trefz, 14 Otto, 197 ; Lutz v. Ins Co., 186 Pa. 527.

*M. F. Leason*, with him *A. H. Burnett*, for appellee.—The case was for the court : McVey v. Grand Lodge A. O. U. W., 53 N. J. L. 17 ; Numrich v. Supreme Lodge, 3 N. Y. Supp. 552; March v. Metropolitan Life Ins. Co., 186 Pa. 629 ; Mengel v. Northwestern Mut. Life Ins. Co., 176 Pa. 280 ; Wall v. Royal Society of Good Fellows, 179 Pa. 355; Blooming Grove Mut. Fire Ins. Co. v. McAnerney, 102 Pa. 335; U. B. Mut. Aid Society v. O'Hara, 120 Pa. 256 ; Mut. Aid Society v. White, 100 Pa. 12; Levell v. Royal Arcanum, 30 N. Y. Supp. 205; Supreme Council of American Legion of Honor v. Green, 17 Atl. Rep. 1048; Piedmont, etc., Life Ins. Co. v. Ewing, 92 U. S. 377; Hook v. Mut. Ins. Co. of Berks Co., 160 Pa. 229.

OPINION BY MR. JUSTICE GREEN, November 6, 1899 :

By the undisputed testimony in this case it was an established fact that Isaac R. Meyers, the insured, was taken sick with typhoid fever on December 3, 1896, and continued suffering from that disease until January 10, 1897, when his physician ceased attending him, and he had apparently recovered his health.   On March 31, 1897, he applied to the defendant company for a policy of life insurance for $3,000.   On April 12, 1897, he was taken sick with pneumonia from which he died on April 20, 1897.   The application for the policy contained the following question, " Have you ever had any serious illness or injury, or undergone any surgical operation, if so state when and where and name and address of attending physician."   To this question the applicant answered " None."   The policy or

beneficiary certificate was prepared but was not taken up until April 17, three days before his death, when some one brought the money to pay the fees and first premium to the proper office, and obtained the policy upon exhibiting the receipt for the money.

The policy contained an absolute warranty of the truthfulness of the answers to all questions, with an express agreement that if any of the answers were untrue it should be void.    On the trial, the defendant submitted various points affirming the falsity of the answer to the above question, and asked for binding instructions to the jury to render a verdict for the defendant.    These points were all affirmed and the verdict was rendered for the defendant in accordance with the instructions. The important assignments of error are to the answers of the court affirming defendant's points and directing a verdict for defendant.    The chief contention of the appellant is that the question of serious illness was a question for the jury, and that the court could not decide it as a matter of law.

While it is true in a case where the previous illness of the applicant was of a trifling and unimportant character, so that it could be reasonably said that a question fairly arose whether the illness was serious, it should be submitted to the jury for their determination, it is not possible to regard the disease known as typhoid fever as being of that character.    And this is especially true of a disease which notoriously leaves so many after results, which may break out at any time within a number of months after recovery, as typhoid fever.    In all such cases good faith requires that a disclosure should be made to the insurer, that the company might at least have information which would put them on inquiry, before issuing a policy upon such an application.    In this particular case the proof of the extremely serious character of the applicant's previous illness was most abundant and in its details was entirely without contradiction.    The affidavits of both the mother and the father of the insured were taken and given in evidence on the trial, the father being the beneficiary of the policy and the plaintiff in this action.    The mother testified in relation to the death of her son and also as to his previous illness.    In regard to the latter she said, " Prior to this time Isaac had an attack of typhoid fever.    We called Dr. J. M. Patton on or about

December 3, 1896. This sickness continued through a period of about seven weeks. This attack was very severe, in fact we did not expect his recovery. We asked the doctor at that time in regard to his chance for recovery. Dr. Patton replied that the case was doubtful." The plaintiff said: "I, Hiram Meyers, do swear that I am the father of Isaac R. Meyers. That I have read the statements made by Salome Meyers, my wife, and certify that they are correct." Dr. Patton who was the attending physician, both in the final illness of the insured and in the previous attack of typhoid fever, was asked: "Q. Doctor, do people die from typhoid? A. Yes, sir. Q. Frequently? A. Yes, sir. Q. As a physician would you say that typhoid fever was a serious illness? A. Yes, sir, I would. Q. Would you say as a physician that the attack which Isaac R. Meyers had at that time was a serious attack of typhoid fever? A. Yes, sir. Q. You may state if you can how seriously ill Mr. Meyers was with typhoid fever. A. Well the condition—his physical condition—would be the only way I could do that. His temperature, that is the fever, ran, I think, from 101, as we call it, to $103\frac{1}{2}$ or 104, through probably two or three weeks; that is considered a serious condition, when the temperature runs to 104, and there was extreme prostration in the latter stages of the disease, sweating and weak pulse and delirium, if I am not mistaken, in the latter stages of the disease, and the bowels were swollen and diarrhœa, want of sleep during the night, and no appetite, and weakness that I considered was as much of a danger as a high temperature would be. The temperature was not out of bounds, yet was high, $98\frac{1}{2}$ being normal, but the prostration seemed to me to be extreme, that there was danger from his weakness of heart failure. Q. Now what length of time during his illness was he in this critical condition? A. About two weeks, I believe."

Now against this most direct and positive testimony from the mother, the father and the attending physician of the insured, there was not a particle of contradictory evidence. Not a witness was called to impeach or impugn in any manner whatever the statements of any of the witnesses; the plaintiff, himself, his wife, the mother of the insured, and the attending physician all concurring in the statement that the attack was severe, so severe that his life was in danger; and the detailed symp-

toms confirming the opinion, it must be taken as a fact established by uncontradicted testimony that the insured did have a serious illness a very short time before he made his application. It follows that his answer to the third interrogatory of the application was false, and as a legal consequence that the policy was void. With this aspect of the case the jury had nothing to do. It was the plain duty of the court to pronounce upon the undisputed evidence that the insured did have a serious illness a short time before he made his application, that his answer was false and for that reason the policy was void.

On the trial some attempt was made on the part of the plaintiff to prove that typhoid fever was not necessarily a serious illness. A few physicians were examined who said that in their opinion such illness was not serious " for life insurance purposes." It is a little difficult to understand how a disease may be serious as a fact, but not serious for life insurance purposes. We have not been referred to any authority for such a distinction, and as it is contrary to the teachings of common sense it can have no claim to judicial recognition. Nor does it help the matter that long questions were put to these physicians, purporting to state the symptoms exhibited by the insured, and have them express the opinion that for life insurance purposes they did not consider typhoid fever indicated by the symptoms as serious. Whatever might be their opinions as to the symptoms, the fact remained that in this particular case the patient did have a most serious illness which endangered his life. None of them saw the patient or had any opportunity of observing his actual condition, and were therefore not qualified to testify as to his real situation. The opinions, such as they were, were controverted by the testimony of other physicians, and the examining physician who took the answers of the insured to the medical questions, settled the subject of the materiality of the answer by his answer to a question put by the counsel for the appellant. He was asked, " Q. Doctor, had this decedent answered you that he had typhoid fever in January, state whether you would have given him a more thorough examination with respect to the dregs of that disease. A. I don't think I would have given him even as thorough an examination as I did, because I would have told him to withdraw his application ; that I would not pass him for at least six months." This exhibits

not only the propriety but the necessity of having truthful answers to such questions. Had the insured told the truth in answering the third interrogatory the present policy would not have been issued, because the applicant would have been rejected.

It is not necessary to continue the discussion. There is no controverted question of law involved in the case. The learned court below performed a plain duty in directing a verdict for the defendant. The assignments of error are all dismissed.

Judgment affirmed.