MARY C. KEATLEY vs. THE GRAND FRATERNITY, a corporation, existing under the Laws of the State of Pennsylvania.

1. EVIDENCE—OPINION EVIDENCE—HYPOTHETICAL QUESTIONS.

A hypothetical question, put to a physician testifying as an expert, need not contain a complete statement of the facts; but the omissions may be brought out on cross examination.

2. INSURANCE—FRATERNAL INSURANCE—CONTRACTS—WHAT LAW GOVERNS.

A benefit certificate, issued by a foreign corporation at its home office in a sister state, on an application providing that it was made to the corporation at its home office, is a contract of the sister state, governed by its laws.

3. INSURANCE—LIFE INSURANCE—WARRANTIES IN APPLICATION.

At common law, answers to questions in an application for life insurance were taken to be literal warranties of their truth, and, if false, a contract of insurance was vitiated, though the answers were made in good faith, regardless of the materiality of the questions or answers to the risk.

4. INSURANCE—LIFE INSURANCE—WARRANTIES IN APPLICATION.

Act Pa. June 23, 1885 (P. L. 134), providing that no untrue statements in an application for life insurance, made in good faith by the applicant, shall effect a forfeiture, unless the same relate to a matter material to the risk, excludes literal warranties, so far as they may be resorted to, to enforce immaterial matters; and an untrue statement must be of a material matter to constitute a defense, and whether a statement in an application made in good faith was true, and whether, if false, it prejudiced the risk, are for the jury.

5. TRIAL—DELIBERATIONS OF JURY.

The jury are the judges of the weight of the testimony, and, where the evidence is conflicting, they must, if possible, reconcile it, and, when they cannot do so, they must reject that which is unworthy of credit; regard being given to the demeanor, fairness, character, intelligence, and interest of the witnesses.

6. INSURANCE—FRATERNAL INSURANCE—FALSE STATEMENTS IN APPLICATION.

Where an application for life insurance, governed by Act Pa. June 23, 1885 (P. L. 134), providing that no untrue statement in an application, made in good faith, shall effect a forfeiture, unless it relates to a material matter, concealed the fact that applicant had suffered from a disease and had undergone an operation therefor some eight or nine years prior to the application, there could be no recovery on the policy, if by reason of the disease and operation his health was seriously impaired, thereby affecting the risk.

7. INSURANCE—FRATERNAL INSURANCE—FALSE STATEMENTS IN APPLICATION.

The failure of insured to disclose in his application that he suffered from diabetes or other serious ailment affecting his general health at the time of the application defeated a recovery on the policy.

8. INSURANCE—MISREPRESENTATIONS IN APPLICATION—EFFECT.

Where an applicant for insurance made false answers respecting matters material to the risk, or made willful false answers to deceive insurer, a recov-

ery could not be had on a policy governed by Act Pa. June 23, 1885 (P. L. 134).

(*December* 11, 1911.)

PENNEWILL, C. J., and BOYCE and RICE, J. J., sitting.

*John Biggs* and *Armon D. Chaytor* for plaintiff.

*Leonard E. Wales* and *Joseph A. Langfitt* (of the Pittsburg, Pa., bar) for defendant.

Superior Court, New Castle County, November Term, 1911.

ACTION OF COVENANT (No. 45, May Term, 1910).

(Same case heard on demurrers to pleas and replications, *ante* 267, 78 *Atl.* 874, also writ of error to judgment in this case, 3 *Boyce*—.)

This action was brought by the plaintiff, who was the widow of William J. Keatley, deceased, to recover the sum of two thousand dollars insurance, under a death benefit certificate of membership issued by the defendant to the plaintiff's husband in which she was named as the sole beneficiary. Payment was refused on the ground that the deceased made untrue answers in his application for membership and was at the time in bad health.

At the trial counsel for defendant propounded to T., a practicing physician (who was examined, qualified and admitted as an expert, but who did not hear all of the testimony in the case) the following question, as based upon the testimony: "Doctor,— given a man of from forty-nine to fifty years of age, weighing from one hundred and ninety to two hundred and ten pounds, whose occupation was that of freight conductor and who, until about a week prior to his death, October 15, 1909, was able to perform his duties;—in June, 1908, he consults a physician complaining to him of frequent and excessive urination, of passing large quantities of water frequently, of being worried at night from loss of sleep and rest, of having to pass urine almost every fifteen minutes at night, of craving sweets, of being always thirsty, of having lost fifteen or twenty pounds within a short time previous, whose urine upon being examined twice a week for four successive weeks during June, 1908, through Fehling's test, shows that it is heavily loaded with sugar; and, thereafter, from June, 1908, up to the time of his death, such person continues to lose or fall

Evidence—Charge.

away in weight, losing as much as eight pounds in one week, and is observed to grow decidedly thinner, and from May, 1909, until the time of his death—October 15, 1909—he is seen to drink water frequently and in unusual quantities,—taking as much as three pints at half hour intervals, and sometimes this much twice within half an hour, drinking in this manner half a dozen times a day together with frequent urination, sometimes occurring at the instant of his drinking;—that he perspired freely and was strong enough to walk a considerable distance to his place of employment on Sunday previous to his death which occurred on Friday:—What, in your opinion was the disease, if any, that affected such person, in June, 1908, and March, 1909?''

(Objected to by counsel for plaintiff as not a complete statement of the testimony.)

BOYCE, J.:—It occurs to the court that the suggestion made by counsel for plaintiff in their objection may be brought out in cross examination. We overrule the objection.

A. Basing my opinion upon what is contained in the question, and assuming that these observations were correctly made, I would suspect diabetes mellitis.

Q. What, in your opinion, was the nature of the disease, if any, that affected such person in June, 1908, and March, 1909, with respect to its seriousness and progressiveness or otherwise?

(Objected to by counsel for plaintiff on the same ground as before stated. Objection overruled.)

A. I regard diabetes mellitis as a serious and progressive disease.

Q. Basing your opinion upon the truth of the facts as stated in this question, you say that was a serious illness?

A. Yes, sir.

BOYCE, J., charging the jury:

Gentlemen of the jury:—This is an action in covenant, brought by Mary C. Keatley, the plaintiff, against the Grand Fraternity, a corporation of the State of Pennsylvania, the defendant, to recover the sum of $2,000 on a death benefit certificate of mem-

bership, alleged to have been issued by the defendant, on the eighteenth day of March, A. D. 1909, to William J. Keatley, husband of the plaintiff, in his lifetime, payable upon satisfactory proofs of the death of the member to Mary C. Keatley, the plaintiff. We decline to give binding instructions, as requested, for the defendant.

The following facts are either conceded or are not controverted; that is: that the said certificate had been duly issued, delivered and accepted, in the lifetime of the member, and was in force, at the time of his death, on the fifteenth day of October A. D. 1909; that the plaintiff is the widow of the deceased and sole beneficiary named in said certificate; and that the sum of $2,000, being the sum named in the certificate, it is alleged is due the plaintiff under the certificate, with interest from the date of the death of the plaintiff's husband, and has not been paid.

The deceased made application in writing for membership in the fraternity on the twelfth day of March, A. D. 1909, in which he declared among other things, " *   *   * I am in sound bodily health, am temperate, and do not and will not practice any vicious, pernicious or other habits which in any manner tend to shorten life.  *   *   * My occupation, personal habits, physical condition, and personal and family history are clearly, distinctly and truthfully set forth in the following questions and answers. *   *   * " And the deceased did therein for himself and his beneficiary promise and agree that he would comply with the requirements of and be bound by the constitution and by-laws of the fraternity, and, among other things, did further promise for himself and his beneficiary "that each and every statement and answer in this application shall be deemed a warranty on the faith of which I am admitted to the beneficial membership in the Grand Fraternity, and no act of omission or commission on the part of the examining physician or any subordinate officer, deputy or member, or any knowledge on the part of either of any facts at variance with any of said statements or answers shall constitute or be held as constituting a waiver of the said warranty. And in case any statement or answer shall not be absolutely true in every respect, or in case there has been any misstatement or

omission or concealment of fact by or on my part, the benefit certificate or certificates issued hereon shall be absolutely void. * * * And as this application is made to, and any certificate or certificates issued hereon will be issued by, the Grand Fraternity at its general offices in the City of Philadelphia, I do hereby agree that this application and the certificate or certificates issued thereon, and the said charter, constitution, statutes, by-laws, rules and regulations of the Grand Fraternity shall always be construed under and according to the laws of the State of Pennsylvania. * * * "

The said death benefit certificate of membership and the said application are in evidence.

The testimony of the plaintiff as to the proofs of death is not disputed and the sufficiency thereof is not an issue in this case.

Among the questions contained in the application addressed to the applicant, and answered by him, the defendant claims that certain of them were not truthfully answered, and it is insisted that these questions and answers were matters material to the risk to be assumed by the defendant.

The questions and alleged false answers relied upon to avoid the certificate have been specifically stated by counsel for the defendant to be these:

"11. Question. When, and for what complaint, did you last consult a physician? Give particulars, with name and address of physician. Answer. Not since childhood—mumps."

"16. Third question. Has your weight recently increased or diminished? If so, why? Answer. No."

"19. Have you ever been subject to, or had, or now have, any of the following disorders or diseases? (Answer 'yes' or 'no' to each.) * * * Piles? Answer. No. * * * Bladder, gravel or kidney disease? Answer. No."

The defendant claims and it is not controverted (1) that Dr. Corkran treated the deceased some eight or nine years ago for piles and performed a surgical operation therefor, effecting thereby a cure, the plaintiff claims, as was testified to by Dr. Corkran; and (2) the defendant further claims that Dr. Chipman, from June 1, 1908, and before the deceased made his application for mem-

bership in March following, treated the deceased for four weeks for diabetes. The plaintiff claims that Dr. Chipman told her and her daughter that he treated the deceased in June, 1909, and denies personal knowledge of any treatment of her husband by Dr. Chipman for diabetes; and (3) the defendant further claims that the deceased before and after June, 1908, and until the time of his death, lost weight, passed large quantities of urine frequently and manifested other symptoms of diabetes. But this is disputed on the part of the plaintiff.

As to the cause of the death of the plaintiff's husband, or whether he had any medical attention in his last illness, there is no evidence.

It further appears from the evidence that the deceased consulted Dr. Kelly once for some ailment which, in the recollection of the doctor, was "a little distress in the stomach, such as a bilous attack," and for which he prescribed. He thought this was in the fall of 1908. He would not say it was not in April, 1909.

The plaintiff insists that the deceased, at the time he made his application for membership and received and accepted the death benefit certificate, was not afflicted with piles or diabetes, or any other disease, which seriously affected his health, but was at the time in good health, and regularly pursued his employment as conductor of a shifting crew of the Philadelphia and Reading Railroad Company, in this city, until some five days before his death.

It is contended by the defendant that the applicant made untrue statements to the questions which we have already mentioned as specifically relied upon by the defendant, and that by the very terms and stipulations contained in the application and made part of the contract of insurance, those answers were literal warranties of their truth to questions in relation to matters material to the risk, and that, if the answers were not true in fact, it is immaterial whether they were made in good faith, it being insisted that the falsity of the answers to such questions, whenever shown, is sufficient to vitiate the contract of insurance, notwithstanding the evidence introduced to show the falsity of the answers to such questions discloses matters immaterial to the

risk. And that in such cases the Pennsylvania Act of 1885, to which we will direct your attention later, does not apply, and does not destroy the common-law rule against literal warranties.

But it was contended by the plaintiff that the purpose of said act was to destroy the rule at common law with respect to warranties in an application for insurance, if the evidence discloses that the matters were immaterial to the risk. And it was insisted that whenever it appears that untrue answers were made to questions in relation to matters material to the risk, it is a question for the determination of the jury whether they were made mistakenly or in good faith, and if so made, the fact furnishes no ground to void the contract of insurance, issued upon such application, unless the evidence discloses matter material to the risk. That is to say, the plaintiff's contention is, although the questions in the application relate to matters material to the risk and were not made willfully false for the purpose of misleading the insurance company, society or association, but were made in good faith, and the evidence discloses that if the questions had been truly answered, the facts would have been immaterial to the risk, in such event, the fact that the answers were not true will not vitiate the contract of insurance.

With this statement of the case and contentions of the parties, we will now address ourselves to our instructions to you upon the law which we deem applicable to the case.

[2] As already shown by provisions contained in the application for the death benefit certificate, sued upon in this action, it is expressly provided therein that the application was made to, and the certificate issued thereon was issued by, the defendant, at its offices in Philadelphia, State of Pennsylvania. The contract of insurance created by the said certificate is, therefore, essentially a Pennsylvania contract, and it is, according to a principle of universal law, "governed by the law with a view to which it is made." *Wayman v. Southard*, 10 *Wheat.* 1, 6 *L. Ed.* 253; *Pritchard v. Norton*, 106 *U. S.* 124, 1 *Sup. Ct.* 102, 27 *L. Ed.* 104.

[3] At common law answers to questions in an application for insurance were taken to be literal warranties of their truth, and, if false, the contract of insurance was vitiated, although the

answers were made in good faith, regardless of the materiality either of the question or answer to the risk. The fact that the answer was false was in itself sufficient to void the contract.

[4] By an act of the Legislature of Pennsylvania, passed June 23, 1885 (P. L. 134), it is provided: "Whenever the application for a policy of life insurance contains a warranty of the truth of the answers therein contained, no misrepresentation or untrue statement in such application, made in good faith by the applicant shall effect a forfeiture or be a good ground of defense in any suit brought upon any policy of insurance issued upon the faith of such application unless such misrepresentation or untrue statement relate to some matter material to the risk."

The said statute has been considered by the Supreme Court of Pennsylvania in a number of cases similar to this.

Counsel for the defendant contended that this statute has not modified the common-law rule respecting warranties of the truth of the answers in an application for insurance, when the questions, it is insisted, like those relied on in this case, themselves relate to matters material to the risk, and it is claimed that the said court in construing the statute has distinguished between the warranty of the truth of the answer to a question manifestly relating to matter material to the risk and one addressed to matter immaterial to the risk.

We have read most, if not all, of the Pennsylvania cases cited by counsel on both sides and wherein the said statute was invoked to prevent the defeat of the contract of insurance sued upon, either by the stringency of stipulations or by the application of the common-law rule respecting literal warranties, and we think the construction of the statute announced by the court in the case of *Hermany v. Association*, 151 *Pa.* 17, 24 *Atl.* 1064, has not been departed from but adhered to in all the subsequent cases. The court there said: "This act has effected a change in life insurance contracts. * * * The questions of materiality and good faith are ordinarily questions of fact, and therefore for the jury. * * * The evident purpose of this legislation was to strike down, in this class of cases, literal warranties, so far as they may be resorted to for the * * * purpose of enforcing actu-

ally immaterial matters.   It provides a rule of construction for
the purpose of preventing injustice, and it is as much the duty
of courts to enforce such rules as it is to administer the statute of
frauds and perjuries."

Cases of this character, involving the application and con-
struction of the said statute, have several times been before the
federal Circuit Court of Appeals, in different circuits.

In the case of *Fidelity Mutual Life Association of Philadelphia,
Pa., v. Miller et al.*, in the Fourth Circuit, 92 *Fed.* 63, 34 *C. C. A.*
211, the court said: "The Supreme Courts of the States of Mary-
land and Pennsylvania have each passed upon the effect of these
statutes, and held that the misrepresentations or untrue statement
contained in an application for insurance, and which is sought to
be made a ground of defense, must be of some material matter.
*   *   *   It is manifest that these statutes were passed to pre-
vent the defeat of the ends of justice by mere technicality.   They
are remedial in character, and should be given such liberal and
reasonable interpretation as would insure a judicial investigation,
in the ordinary way, of whether the particular statement alleged
to be untrue or a misrepresentation was material to the risk.   If
the statement is found to be material, the penalty of forfeiture of
the policy will follow, whether the answer be made in good faith
or not.   Should the question untruly answered relate to something
found not to be material, and the answer be made in good faith,
then the breach of warranty works no prejudice to the insured or
his representatives.   We   *   *   *   agree with the learned judge
[below] that the questions of materiality and good faith in the
answers to questions propounded in the application for insurance
are not always to be left to the consideration of the jury, but
when such materiality is obvious, and the answers in the applica-
tion are expressly made the basis of the contract, it is a matter
for the court to pass upon.   Otherwise, or when the materiality
depends upon disputed facts, it should be determined by the jury.
We have examined the two recent cases in the Supreme Court of
Pennsylvania on this subject, to which our attention was called,
of *Lutz v. Insurance Co.*, 186 *Pa.* 527, 40 *Atl.* 1104, and *March v.
Insurance Co.*, 186 *Pa.* 629, 40 *Atl.* 1100, 65 *Am. St. Rep.* 887

(relied upon by counsel in the case now before this court), in which the act of the twenty-third of June, 1885 (P. L. 134),  *  *  * was considered  *  *  *''   We do not see anything in either of these decisions which changes or materially alters the doctrine laid down in the case of *Hermany v. Association, supra,* so far as affects this case.

In the case of *Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank and Trustee,* 72 *Fed.* 413, 418, 19 *C. C. A* 286, 292 (38 *L. R A.* 33), Judge Taft, delivering the opinion of the Circuit Court of Appeals, in the Sixth Circuit, said of the said statute: ''A reasonable construction of the Pennsylvania statute will not permit the mere fact of warranty in form to render every statement of fact material to the risk. Its manifest purpose was to leave open to judicial investigation in the ordinary way the question whether the fact concerning which inquiry was made, and an untrue answer given, was material to the risk. If it is in this manner found to be material, then the plain implication of the statute is that the usual penalty for breach of insurance condition and warranty shall follow, and the policy be avoided, whether the answer be made in good faith or not. If, however, the question untruly answered relates to something not found to be material to the risk, and if the answer is in good faith, then the breach of warranty works no prejudice to the insured or his representatives. If, though the question untruly answered relates to something not directly material to the risk, the untrue answer is made in bad faith, that is, with a knowledge of its falsity, and for the purpose of misleading the company into the contract, the implication of the statute is that the rule at common law shall prevail, and the policy shall be avoided.''

We think this announcement not only reasonably construes the purpose and scope of the statute, but when examined in the light of the facts in the particular cases decided in Pennsylvania, it conforms to the construction given to the statute by the Supreme Court of that state.

In the case of *Smith v. Insurance Co.,* 183 *Pa.* 504, 38 *Atl* 1038, which is similar on the facts to the case now before the court, the defendant refused to pay the insurance on two grounds:

(1) It was alleged that the insured was not in sound health "upon the date of the policy"; and (2) that his answers to certain questions contained in his application for insurance were untrue.

The Supreme Court on appeal held that the first ground on which payment was resisted is sufficient, if established by competent evidence, to bar a recovery, and so is the second ground, if the answers complained of, although made in good faith by the applicant, relate to some matter material to the risk; and in support of their ruling upon the second ground of defense made the following extract from the *Hermany case, supra:* "Statements made by an applicant for life insurance, which are incorrect and untrue, will not avoid the policy, if they are immaterial to the risk, and are made in good faith, and in the belief that they are true."

In the *Smith case, supra,* the evidence appeared uncontradicted that the insured in his application denied the attendance of any physician except the one named prior to the date of the policy and for any disease except typhoid fever, and that he was attended by two other physicians before the date of the policy— by one for heart disease, and by the other for a paralytic stroke. In the court below, the jury were instructed, in substance, if they should find from the evidence that the insured was attended for either of said diseases, their verdict should be for the defendant. But if any physician, other than the one named in the application attended the insured under other circumstances, it was left to the jury to say whether it was a material matter that was omitted in the answer of the insured; that is, whether it related to a matter material to the risk. And the jury were instructed, if they should find from the evidence that the matter omitted was material to the risk, their verdict should be for the defendant; if not material then they should inquire whether the omission was made in good faith, and if made in good faith, it would not vitiate the policy. In passing upon the instruction of the court below to the jury, the Supreme Court said: "Whether there was bad faith or materiality in the omission to mention Drs. C. and T. in the answer to the seventh question was, in our opinion a matter to be determined by the jury upon the evidence." And it was held that such omission, if the answer was made in good faith and related to

an immaterial matter, did not impose upon the court the duty of declaring a forfeiture of the policy for the reason, as stated in the *Hermany case*, *supra*, that questions of materiality and good faith are ordinarily questions of fact, and therefore for the jury.

Whether, under the evidence, and the rule of good faith and materiality provided by the statute, the deceased was in good health at the time of making his application for membership in the fraternity, or whether his health was of such a character at that time as to prejudice the risk—that is, was such as to make it material to the risk—or whether he was attended by one or more physicians after the time mentioned in his application, and before making it, and if so whether the omission to state the fact as well as the disease or diseases for which and when he was attended, are clearly matters of fact for the jury under the statute as administered by the courts of Pennsylvania. And we do not deem it necessary to further burden this charge to the jury by a review of the many other cases cited, and especially those relied upon outside of that jurisdiction.

The Pennsylvania cases cited by counsel for the plaintiff are *Hermany v. Life Ass'n*, 151 *Pa*. 17, 24 *Atl*. 1064; *Smith v. Insurance Company*, 183 *Pa*. 504, 38 *Atl*. 1038; *McClain v. Assur. Soc.*, 110 *Fed*. 80, 49 *C. C. A.* 31; *Keatley v. Insurance Co.*, 187 *Pa*. 197, 40 *Atl*. 808; *Life Ass'n v. Gillespie*, 110 *Pa*. 84, 1 *Atl*. 340; *McCaffrey v. Knights, etc., of Columbia*, 213 *Pa*. 609, 63 *Atl*. 189; *Meyers v. Woodmen*, 193 *Pa*. 470, 44 *Atl*. 563; *Barnes v. Insurance Co.*, 191 *Pa*. 618, 43 *Atl*. 341, 45 *L. R. A.* 264.

Those cited by counsel for the defendant are *Dinan v. Association*, 201 *Pa*. 363, 366, 50 *Atl*. 999; *Wall v. Society*, 179 *Pa*. 356, 366, 36 *Atl*. 748; *March v. Insurance Co.*, 186 *Pa*. 629, 40 *Atl*. 1100, 65 *Am. St. Rep.* 887; *Lutz v. Insurance Co.*, 186 *Pa*. 527, 40 *Atl*. 1104; *Baldi v. Insurance Co.*, 24 *Pa. Super. Ct.* (*Pa.*) 275, 290, 291; *Murphy v. Insurance Co.*, 205 *Pa*. 444, 452, 55 *Atl*. 19; *Society v. O'Hara*, 120 *Pa*. 256, 266, 13 *Atl*. 932; *Priestly v. Insurance Co.* (*C. C.*) 112 *Fed*. 271.

In the case of *Hews v. Eq. Life Assur. Society of United States*, in the Circuit Court of Appeals, Third Circuit, 143 *Fed*. 850, 74 *C. C. A.* 676, the court held that the intent with which a represen-

tation was made is relevant to a question as to whether a fraud was committed in making it is unquestionably true, and it may be conceded that ordinarily, in an action upon a policy, it is for the jury to determine whether statements material to the risk and untrue in fact were made by the applicant with knowledge of their untruthfulness, and with the fraudulent design of thereby inducing the issuance of the policy.

[5] You are the exclusive judges of the weight and credibility of the testimony of the witnesses. When, as in this case, the evidence is conflicting, you should reconcile it so far as it is possible; but, when you cannot do so, you should reject that which appears to be unworthy of credit and accept that which you deem reliable. In your examination of the testimony of the witnesses you should have regard to their demeanor upon the stand, their fairness, character and intelligence, their interest or bias, if any, as well as their opportunity for knowing the things of which they testified and all other facts before you which may aid you in reaching a proper conclusion as to the credit to which they are entitled. And your verdict should be for that party in whose favor is the preponderance or weight of the evidence.

[6] As to the testimony of Dr. Corkran, we submit to you to find from the evidence whether the deceased was at the time of making his said application afflicted with piles. And the deceased having had piles some eight or nine years ago and a surgical operation having been performed therefor by the doctor, who testified the deceased was cured, you will also inquire from the evidence whether the deceased's health was seriously impaired in consequence thereof at the time of making his said application. If the deceased had piles at the time of making his application, or if the attack as testified to by Dr. Corkran seriously impaired his health and it was so impaired by reason thereof at the time of making the application, it was a matter material to the risk, and will prevent a recovery on the certificate of insurance.

[7] If you find that the deceased had diabetes at the time of making his application, a recovery cannot be had on the certificate of insurance.

In considering the testimony of Dr. Chipman, you should

first determine under the evidence whether he attended the applicant before or after making his application.   If you find that he attended him in June, 1908, before the application was made, you should then determine from all the evidence whether the deceased had at that time, and afterwards, diabetes or any other serious ailment affecting his general health.   If he had, his failure to disclose it in his application would defeat a recovery on the certificate of insurance.

There is conflict in the testimony touching the character of the disease which the applicant had, if any, at the time of making his application.   You have the testimony of Dr. Chipman and of the witnesses giving support to his testimony, including the testimony of physicians called as experts and of the several witnesses who were acquainted with the deceased.   The testimony of Dr. Chipman is opposed by Dr. Foulk, who was the medical examiner for the defendant, and who made an examination of the applicant at the time he made his application, also by other witnesses who were acquainted with the deceased and with his general health.

You have all this testimony before you.   We cannot charge you upon it, if we had any inclination to do so.   It is for you to say under all the evidence produced before you whether the deceased was afflicted with diabetes from and after June, 1908, or was in bad health at the time of making his application for insurance; if so, a recovery cannot be had on the certificate of insurance.

We also submit to you for your determination, from all the evidence, whether the deceased before and after June, 1908, and until the time of making his application for insurance, lost weight, passed large quantities of urine frequently, and manifested other symptoms of bladder, gravel or kidney disease.   If you so find, and believe that the condition of the deceased at the time he made his application was such as materially affected the risk, a recovery cannot be had upon the certificate of insurance.

So far as the testimony of Dr. Kelly is concerned, it should be considered by you in connection with all the other testimony in the case, in reaching your determination in respect to the deceased's condition of health at the time he made his application.

If you should find from the evidence, under our instructions

Charge—Verdict.

to you, that the plaintiff is not entitled to a recovery on the certificate of insurance, nevertheless the defendant having under a plea of payment and rule of court paid into court the sum of $190.36, an amount sufficient to cover the dues or premiums paid by the deceased to the defendant, together with the costs then accrued in the case, your verdict should be in favor of the plaintiff for such amount.

[8] In conclusion, we say that if you are satisfied from the weight or preponderance of the evidence that the deceased, at the time he made his application for insurance, made false answers to the questions we have mentioned, or to any of them, respecting matters which were material to the risk, or if he made answers to such questions as we have mentioned falsely, wilfully and in bad faith, for the purpose of deceiving the company, a recovery cannot be had for the insurance.

But, on the other hand, if you believe that the answers were not falsely made, or that they were falsely made in good faith, and in respect to matters that were not material to the risk, your verdict should be in favor of the plaintiff for the amount of the certificate of insurance with interest from the fifteenth day of October A. D. 1909.

Verdict for plaintiff.