LOUISE E. W. BILLINGS *vs.* THE METROPOLITAN LIFE INSUR-
ANCE COMPANY.

January Term, 1898.

Present: Ross, C. J., TAFT, ROWELL, TYLER, MUNSON and THOMPSON, JJ.

*Evidence— Insurance Policy— Warranties— Illness  Defined — Burden of
Proof—Exception to Argument.*

The wife of the insured, when asked as a witness to describe her husband's
appearance in respect of health, replied that he was in sound health, that
he appeared to be in sound health.  *Held,* that the answer must have
been understood as nothing more than that he appeared to be perfectly
well, which was admissible.

A party is not entitled, under the guise of refreshing his witness's recollec-
tion, to inject into the testimony portions of an affidavit formerly made
by the witness.

It is well settled in this State that a witness whose testimony is given by
deposition may be impeached by proof of declarations made by him
inconsistent with his testimony, without his attention first being called
to them.

The word, "illness," as used in questions to an applicant for life insurance,
means a disease or ailment of such a character as to seriously affect the
general soundness and healthfulness of the system, and not a mere
temporary indisposition.

Although a policy provides that the answers of the applicant shall be
warranties, the omission to answer a question is not a warranty that
there is nothing to answer, nor, is a partial answer a warranty beyond
what-is stated.

Fraud may be predicated upon the suppression of truth, but breach of
warranty must be based upon the affirmation of something not true.

Even a warranty that the answers are full, means that they are full in the
sense that the assured has not intentionally concealed or withheld any
material fact or circumstance.

Warranties in policies of insurance are construed strictly against the com-
pany.

A question whether the applicant has consulted physicians, calls only for
consultations in respect of matters material to the risk, and not for
consultations in respect of some indisposition not properly called a
disease.

The burden is upon the defendant to establish the falsity of any answer of the
insured, and the truth of any fact, which would constitute a breach of
the warranty upon which it relies.

It is not considered whether the argument to which exception was taken was justified by the evidence, as the trial court held it unjustified and instructed the jury to disregard it, and this court is satisfied that no harm was done to the excepting party.

ASSUMPSIT upon a policy of life insurance. Plea, not guilty and notice. Trial by jury at the May Term, 1897, Windsor County, *Start*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

*John DeWitt Peltz* and *Dillingham, Huse & Howland*, for the defendant.

*Butler & Moloney* and *W. W. Stickney*, for the plaintiff.

THOMPSON, J. (1) The plaintiff testified without objection that her husband, the insured, was in sound health at the time he took out the policy of life insurance in question. Thereupon counsel for the defendant, interrupted the witness and insisted that she could only testify to "his appearance of health." The witness was then asked to describe the physical appearance of the insured in May, 1894, stating everything she could recollect, and replied in substance that he was in sound health and that she did not know of anything else she could say; that he appeared to be in sound health. After the answer was given, the defendant took, and was allowed, an exception to the expression "sound health," used therein. This was no more than saying that he appeared perfectly well, and must have been so understood by the court and jury. This was permissible. This exception cannot be sustained. *Knight* v. *Smythe*, 57 Vt. 529: 1 Greenl. Ev. (12th Ed.) § 440*a*; *Rawls* v. *American Mutual Life Ins. Co.*, 27 N. Y. 282: 84 Am. Dec. 280.

(2) It was not error to exclude the answers to questions 5 to 12, and 14 to 17 in the deposition of Dr. Constans, introduced in evidence by the defendant, as they related to his statements in an affidavit made by him for the defendant, and which was not admissible in evidence against the plaintiff. The deponent was permitted to refresh his memory by

examining the affidavit. While this may have been permissible, it did not give the defendant the right to inject the affidavit into the deposition under the guise of refreshing the deponent's recollection.

(3) The deposition of Dr. A. V. Lyon was introduced in evidence by the defendant. In her rebuttal, the plaintiff, subject to the defendant's exception, was permitted to read in evidence a letter written and signed by this deponent, which tended to contradict his testimony in respect to material matters. It is now urged by the defendant, that this was error because the deponent's attention was not called to the letter, although he was cross-examined on other points by the plaintiff. It is well settled in this State that a witness whose testimony is given on trial by deposition, may be impeached by proof of declarations made by him, inconsistent with his testimony, without first calling his attention to them. *Downer* v. *Norton*, 19 Vt. 338; *Robinson* v. *Hutchinson*, 31 Vt. 443. This letter, however, had no probative force for either party, except as impeaching the credibility of the witness Lyon. Hence this exception is not well taken.

(4) The defendant contends that its motion to direct a verdict should have prevailed on the ground that the insured was not in sound health at the date of the policy, and the condition of the policy in this respect was broken and the policy was for that reason void. The policy among other conditions provided that no obligation was assumed by the defendant under it unless upon its date the insured was in sound health. It did not appear by uncontradicted evidence that the insured was not in sound health at the date of the policy. The evidence on behalf of the plaintiff tended to prove that he was in sound health at that date. If it can be said that the evidence of Dr. Constans supported the contention of the defendant, which is a construction of it most favorable to the defendant, an issue of fact was raised, which was for the jury to determine. *Grattan* v. *Metropolitan Life*

*Ins. Co.,* 92 N. Y. 274: 44 Am. Rep. 372. No question is made but that this issue was submitted to the jury under proper instructions by the trial court, and the jury found by special verdict that the insured was in sound health at the date of the policy. This motion of the defendant was properly denied.

(5) By the terms of the application signed by the plaintiff and her husband, the insured, it was agreed and warranted by them, that the answers and statements contained therein, and those made to the medical examiner, should be the basis and become part of the contract of insurance; that they were full and true, and that any untrue answers, or any suppression or concealment of facts in any of the answers, should render the policy null and void.

On trial, the defendant disavowed any claim on its part to defeat the policy on the ground of fraud, and in respect to matters in the application which it claimed to be untrue, relied upon said warranty therein contained.

The application contained among others, the following questions and answers:

*Question.* "Have you ever had bronchitis?" *Answer.* "No."

*Question.* 3. "Give full particulars of any illness you may have had since childhood, and name of medical attendant or attendants." *Answer.* "Measles, 8 years ago, Dr. Fox."

*Question.* 6A. "Name and residence of your usual medical attendant." *Answer.* "Have none."

*B.* "When and for what have his services been required?" *Answer.* "........................."

*Question.* 7. "Have you consulted any other physician? If so, when and for what?" *Answer.* "See No. 3."

The defendant claimed in its pleadings and upon trial that before the application, the insured had had bronchitis, and illnesses other than measles, and that he had consulted and been treated by physicians other than Dr. Fox, and that the answers to the question respecting bronchitis and to

questions 3, 6 and 7, were untrue, and on this ground also, moved the court below to direct a verdict for it, and excepted to the denial of this motion.

The date of the application was May 15, 1894, and the date of the policy was May 31, 1894.

The testimony of Dr. Constans tended to show that he at his office prescribed for the insured in May, 1893, for "gastric trouble,"—"acute gastritis"—and in November, 1893, "for bronchial cold—acute bronchial trouble at that time—a slight cold;" that the gastric trouble in May, 1893, was not of a serious nature, but only a slight indisposition; that the term acute bronchitis means an ordinary cold in the chest, and that the bronchial cold for which he prescribed for the insured in November, 1893, was an ordinary cold, not of a serious nature, and such as a person might ordinarily have and get rid of easily. The testimony of Dr. A. V. Lyon, introduced by the defendant, tended to show that in May and June, 1892, he treated the insured for a grip cold and its results, and in August, 1892, for a cold with hoarseness, but that he was not sick in bed at any of the dates mentioned. The testimony of Dr. Fox, a witness produced by the defendant, tended to prove that he attended the insured in June and July, 1885, when he found him suffering from measles which had developed an acute bronchitis; and that acute bronchitis, more or less pronounced, usually accompanies the measles. The testimony of Mary A. Billings, a witness improved by the plaintiff, tended to show, that when a boy, between fourteen and fifteen years old, and living at home, and prior to May, 1894, the insured was sick a few days, but sick in bed only the first day, and during this sickness was visited once or twice by Dr. Crowley. This is substantially the evidence on which defendant relied in support of this motion.

The evidence on the part of the plaintiff tended to prove that it was a misnomer to call an ordinary cold, or a grip cold, or the so-called acute bronchitis said to accompany

*31*

measles, bronchitis; that bronchitis as known to the medical profession, was a different disease from any of the ailments for which Drs. Constans, Lyons and Fox claimed to have treated the insured; that the acute bronchitis described by Dr. Fox was a part of the measles and an ordinary accompaniment thereof; that with the exception of the measles, the ailments for which it was claimed the insured had been treated prior to the date of the policy were not diseases nor illness. This clearly raised the issue of fact whether the insured, at the date of his application, had bronchitis or not. This issue was properly submitted to the jury, which found against the defendant.

A mere temporary indisposition, not serious in its nature, such as indicated by the evidence on the part of the defendant, other than measles, cannot be considered an illness, and the mere calling into a doctor's office for some medicine to relieve such temporary indisposition, or the calling at the home of the insured by the doctor for the same purpose, cannot be considered an attendance by a physician nor a consultation of a physician, within the meaning of the questions 3 and 7. "Illness" as used, means a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition which does not tend to undermine and weaken the constitution of the insured.

The evidence tended to show that "acute gastritis," might mean "belly ache," caused by slight indigestion resulting from over eating, and was of short duration and in no sense dangerous. It would be absurd to suppose that to properly answer question 3 within the true intent of the inquiry, the insured must enumerate this and all the other aches and ills, however slight, transitory, and harmless, which he had had from his childhood to the date of the application. Clearly such was not the scope of the inquiry. *Brown* v. *The Metropolitan Life Ins. Co.*, 65 Mich. 306: 8 Am. St. Rep. 894; *Morrison* v. *Life Ins. Co.*, 59 Wis. 162: 3 Joyce Ins. § 204.

The insured in answer to question 6, calling for the name and residence of his usual medical attendant, replied that he had none. Then followed the question, "When and for what have his services been required?" to which no answer was given. Then immediately follows question 7, "Have you consulted any other physician? If so, when and for what?" This question standing thus, may mean, consulted any physician other than the insured's usual medical attendant, and he had a right to so understand and construe it, as undoubtedly he did, hence his answer by referring to question and answer 3, was true, as Dr. Fox was a physician other than his usual medical attendant.

In *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256: 25 Am. Rep. 182, the application for insurance contained the following questions and answers:

*Question.* "Has the party had, during the last ten years, any sickness or disease? If so, state particulars, and the name of the physician or physicians, who prescribed, or who were consulted." *Answer.* "Nine years ago had an attack of typhoid fever." *Question.* "Have you employed or consulted any physicians for yourself or your family? If so, give name or names and residence." *Answer.* "Dr. Paine, Putnam, Conn., nine years ago; he is now dead." It was proved beyond question that in August, 1866, at Binghamton, the insured had an attack of spitting blood, and that a doctor was called and visited and prescribed for him twice. The evidence also tended to show that a Dr. Clark, attended and prescribed for the assured at Niagara Falls, daily from June 16 to July 3, 1867.

The action was defended on the grounds of breach of warranty, and fraud in the representations contained in the application upon which the policy was issued. In disposing of this phase of the case the court said:—

"Upon this evidence, can it be held as a matter of law that there was a breach of warranty in the answers in respect to the physicians? The answers were literally true. Dr. Payne

had been his physician about the time mentioned, in a serious and protracted illness, and he was dead. It was not said that he had had no other physician, and if a fuller and more precise answer was desired, the defendant should have exacted it. It was full and complete so far as it went. *Fitch* v. *Am. Pop. Life Ins. Co.*, 59 N. Y. 557, 573: s. c. 17 Am. Rep. 372; *Edington* v. *Mut. Life Ins. Co.*, 67 N. Y. 185. If a question is not answered, there is no warranty that there is nothing to answer. *Liberty Hall* v. *Ins. Co.*, 7 Gray 261. And so in case of a partial answer, the warranty cannot be extended beyond the answer. Fraud may be predicated upon the suppression of truth, but breach of warranty must be based upon the affirmation of something not true. Here there was no warranty that the answer stated the names of all the physicians whom he had employed or consulted at any time. It is true that in the agreement annexed to the application it is said that the anwers are warranted 'to be full.' But what was intended by these words, and what had the assured a right to suppose was intended by them? Was it intended that the assured should lose the benefit of his policy, if he omitted, innocently or inadvertently, to give the name of every physician who at any time had been employed for himself or for his family in any illness however temporary or trifling? The circumstances under which the words were used forbid such a construction. The assured had answered many questions calling for minute information upon many subjects, and for the substantial truth of his answers, he was responsible. The other thing to be provided against was the suppression of the truth, and hence in the agreement there is a warranty that the answers are full and that no material circumstance has been 'concealed or withheld.' Taking all the language used, the meaning was that the answers were true, and that they were full in the sense that the assured had not intentionally concealed or withheld any material fact or circumstance. The assured could not have understood from all the language used that if he answered

honestly all the questions put to him, he was to lose the benefit of his policy in case he omitted to answer some fact requisite to make any one of the numerous answers full, because his attention was not particularly called to it, or because it had escaped his attention or memory, or because he did not deem it material to a full answer. Warranties in policies of insurance are strictly construed. They will not be extended to include anything not necessarily implied in their terms. *Loud* v. *Ins. Co.*, 2 Gray 221; *Campbell* v. *Ins. Co.*, 98 Mass. 381; *Hide* v. *Bruce*, 3 Douglass 213.  *  *  *  * Conditions and provisos must be strictly construed against the insurers, because they have for their object to limit the scope and defeat the purpose of the principal contract; and as the insurer prepares the contract and furnishes the language used, any ambiguity in the contract must be taken most strongly against him. *Fowkes* v. *M. & L. Life Ass. Ass'n*, 3 Best & Smith (Q. B.) 917." See *Higgins* v. *Ins. Co.*, 74 N. Y. 6; *Phœnix Mut. Life Ins. Co.* v. *Raddin*, 120 U. S. 183: 30 L. C. P. Co. 644. This is a correct statement of the law applicable to the case at bar, and especially in view of the fact that the defence is based solely on the ground of a breach of warranty. The trial court could not hold as a matter of law that the insured had consulted physicians other than Dr. Fox, and properly submitted to the jury the question whether he had done so, presumably under suitable instruction in regard to what would constitute a breach of the warranty that the answers were full and true, within the meaning of the policy. On this question, the jury found in favor of the plaintiff.

(6) In charging the jury, the court among other things said: "I instruct you that if, when he consulted physicians—if you find he did—he was not suffering from any disease, or that he did not consult them for a disease, then his answers to the interrogatories I have read (ints. 3, 6 and 7) would not render the policy void, and the plaintiff would be entitled to recover, notwithstanding he consulted these physicians,

provided she has established her right of recovery in other respects," to which the defendant excepted. The charge was correct. The questions called only for consultation of physicians in respect to matters material to the risk of insuring the life of the insured. If he had consulted them upon matters other than disease or illness of himself, as we have defined them, it was immaterial.

(7) It is not necessary to pass upon the question whether the evidence was such as to justify the language of plaintiff's counsel, used in argument, to which the defendant excepted. The trial court held it to be improper, and instructed the jury not to consider it, and counsel thereupon withdrew it. The action thus taken by the trial court was proper, and we are satisfied that what occurred cured any harm that could have happened to the defendant from the remark to which exception was taken.

(8) The motion to set aside the general verdict and the special verdicts from 2 to 8 inclusive, was rightly denied. The evidence tended to support the general verdict. These special verdicts were submitted to the jury without objection or exception by the defendant. The burden was upon it to establish the falsity of any answer of the insured, and the truth of any fact, which would constitute a breach of the warranty upon which it relied in defence. *Guiltman* v. *Ins. Co.*, 69 Vt. 469. If the jury did not believe the evidence introduced by the defendant bearing upon the issues presented by these special verdicts, or found that there was not a fair balance of evidence in its favor in that behalf, the jury were justified in returning these special verdicts as they did. The jury may have properly returned them upon either or both these grounds.

*Judgment affirmed.*