## Mary A. Barnes *v.* The Fidelity Mutual Life Association, Appellant.

*Words and phrases—Insurance—" Good health."*

The term " good health," when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system.

*Insurance—Representations of good health—Question for jury.*

An applicant for a policy of life insurance was in good health at the time of the application, but was ill with a cold when the premium was paid and the policy delivered. The cold developed into pneumonia, of which he died three days after the payment of the premium. At the foot of the policy was printed the following provision: "The policy issued hereon shall not become binding until the first payment due thereon has been actually received by the association or its authorized agent during my life time and good health." *Held,* that it was for the jury, under proper instructions of the court as to what constitutes good health, to determine whether he was in insurable good health, within the meaning of the representations contained in the application, at the time the insurance was consummated by payment of the premium.

Argued April 11, 1899. Appeal, No. 48, Jan. T., 1899, by defendant, from judgment of C. P. Luzerne Co., May T., 1894, No. 304, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on policy of life insurance. Before LYNCH, J.

The evidence shows that plaintiff's husband, while in good health, applied for a policy of life insurance in defendant company for $5,000. The application for insurance contained the following representations:

" The first section provides: I hereby apply to the Fidelity Mutual Life Association of Philadelphia, Pa., for a policy of insurance to be issued in pursuance of this application.

" 2d. I certify that my full name is John L. Barnes; that I was born on the 25th day of July, A. D. 1851, at Swansea, Wales, G. B. .

" 3d. That I am now in good health and am free from any and all diseases, sickness, ailments or complaints, trivial or otherwise, except as here stated."

Other facts appear by the opinion of the Supreme Court.

Defendant's points and the answers thereto among others were as follows:

1. The application for insurance contains the following representation which is material to the risk: " I am now in good health, and am free from any and all diseases, sickness, ailments or complaints, trivial or otherwise." The plaintiff's testimony shows that deceased was sick and confined to his bed at the time the first premium was paid and the contract delivered.

The contract is therefore void, and the plaintiff cannot recover in this action. *Answer:* I decline to so charge. [1]

2. One of the conditions upon which the contract of insurance was to be binding was that a receipt for the payment, in cash or its equivalent, of the first premium, signed by the president and treasurer of the company, and countersigned by the agent or person to whom payment is made, as evidence of such payment, be delivered with and accompany the policy within sixty days from the date hereof, and during the lifetime and good health of the person on whose life it is issued. *Answer:* I decline to so charge. [2]

The court refused binding instructions for defendant. [6]

The court left the question to the jury whether at the time of the payment of the premium plaintiff's husband was in " good health " within the meaning of the policy.

Verdict and judgment for plaintiff for $6,275.75. Defendant appealed.

*Errors assigned* among others were (1, 2, 6) above instructions, quoting them.

*H. W. Palmer*, for appellant.—If, prior to the consummation of the contract, the applicant has died, or there has been a material change in his health, the insurer must be informed thereof. Otherwise, a fraud would be perpetrated on such insurer : May on Insurance, sec. 190 ; Calvert v. Ins. Co., 1 Allen (Mass.), 308 ; Ins. Co. v. Ewing, 92 U. S. 377 ; De Camp v. Ins. Co., 3 Ins. L. J. (N. Y.) 89.

Having no authority to deliver the policy without payment of the premium, it is obvious that the agent's willingness to do so, or to give credit, can create no contract with his principles : Marland v. Ins. Co., 71 Pa. 396 ; Ins. Co. v. Conover, 98 Pa. 384.

Nothing in the application or in the policy indicated that the agent could make the company liable on the policy by delivering it before the premium was paid : Greene v. Ins. Co., 91 Pa. 389 ; Ins. Co. v. Imp. Co., 100 Pa. 142.

*John T. Lenahan*, with him *Edward A. Lynch*, for appellee. —The testimony raised a controverted question of fact for the

jury: Hermany v. Fidelity Mut. Life Assn., 151 Pa. 19; Dietz v. Ins. Co., 168 Pa. 504.

The condition of the health of the insured, when the policy was issued, was essentially and entirely a question of fact, to be decided upon the evidence, involving the credibility of witnesses: Keatley v. Ins. Co., 187 Pa. 198.

The court below properly instructed the jury on the question of the health of the insured, quoting from Richards on Ins. sec. 173. See also 3 Joyce on Ins. sec. 2004.

In Cushman v. Insurance Co., 70 N. Y. 77, the court held "that colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state." The legal principle enunciated in this case is peculiarly applicable to the present case. To the same effect are Peacock v. Ins. Co., 20 N. Y. 296; Metropolitan Life Ins. Co. v. McTague, 49 N. J. L. 587.

Where a life insurance company defends to a suit on a policy on the ground that the insured made untrue statements as to the condition of his health at the time he applied for the insurance, the case is for the jury, where there is a positive conflict in the evidence respecting the health of the insured at the time the policy was issued: Smith v. Met. Life Ins. Co., 183 Pa. 504.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 23, 1899:

This appeal from the judgment entered in an action on a life insurance policy issued by the defendant association, and dated November 14, 1893, presents the single question: Whether there was sufficient evidence of "good health" of the insured, at the time the policy was delivered, to go to the jury?

On October 30, 1893, plaintiff's husband made application to defendant association for insurance on his life in the sum of $5,000, payable upon his death to his wife, the plaintiff in this suit. Among other representations, the application contains the following: "That I am in good health and free from any and all diseases, sickness, ailments or complaints, trivial or otherwise." It is conceded that plaintiff's husband was in good health at the time his application was presented to and acted on by the defendant association. The policy was issued and sent to the local agent, Lewis L. Evans, for delivery upon pay-

ment of the premium. The latter was not paid until November 28, 1893, at which time the policy was delivered to plaintiff. At the foot of the policy is printed the following provision : " The policy issued hereon shall not become binding until the first payment due thereon has been actually received by the association or its authorized agent during my life time and good health." It was admitted that the insured contracted an ordinary cold on November 25, 1893, and that he died of pneumonia six days thereafter, but it was claimed by the plaintiff, and the evidence tended to prove, that pneumonia, the disease of which Mr. Barnes died, did not " set in " until the day after the premium was paid and policy delivered.

As stated in the learned trial judge's charge, the questions in dispute were : " The real contention here, on the part of the plaintiff is, that while Mr. Barnes was sick and in bed from Saturday, November 25, until the night of Thursday, the 30th of November, when he died, still the sickness, up to and including the time when the policy was issued and the money paid by Mrs. Barnes, was simply trivial or temporary, as they believed, and that the serious illness which took Mr. Barnes's life set in the next day, or Wednesday evening, when he had a severe chill. The contention of the defendant is that Mr. Barnes was taken down on Saturday with a severe cold which steadily grew worse, and that at the time the premium was paid to Mr. Evans, Mrs. Barnes either knew, or ought to have known, her husband was a very sick man, and it was a fraud upon the company to have him insured."

In a fair and impartial charge these and subordinate questions were submitted to the jury by the learned trial judge, who among other things said : " A temporary or slight cold in a man of usually good health . . . . would not constitute unsound health." In view of the instructions, under which the case was submitted to the jury, on all the evidence, their verdict in plaintiff's favor necessarily implies that they found as a fact that when the premium was paid and the policy delivered, on November 28, 1893, Mr. Barnes was, according to the true intent and meaning of the policy, in " good health." That finding of fact definitively settled the controlling question in the case. The jury were correctly instructed as to the meaning of the words, " good health." As stated by a learned text writer, the term " good

health," does not mean absolute perfection, but is comparative. The insured need not be entirely free from infirmity or from all the ills to which flesh is heir. If he enjoys such health and strength as to justify the reasonable belief that he is free from derangement of organic functions, or free from symptoms calculated to cause a reasonable apprehension of such derangement, and to ordinary observation and outward appearance his health is reasonably such that he may with ordinary safety be insured, and upon ordinary terms, the requirement of "good health" is satisfied. Slight troubles, temporary and light illness, infrequent and light attacks of sickness, not of such a character as to produce bodily infirmity or serious impairment or derangement of vital organs, do not disprove the warranty of good health. In other words, the term "good health," when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy void: 3 Joyce on Ins. sec. 2004. "Colds are generally accompanied with more or less congestion of the lungs, and yet in such a case there is no disease of the lungs which an applicant for insurance would be bound to state:" Cushman v. Insurance Co., 70 N. Y. 77.

It is unnecessary to refer in detail to the evidence. It was clearly sufficient to warrant the submission of the case to the jury on the question of the good health of the insured at the time the premium was paid and policy delivered to plaintiff, and other subordinate questions of fact in dispute. This is especially so, in view of the fact that the evidence was more or less conflicting on all material questions of fact. The case was clearly for the jury: Smith v. Metropolitan Life Ins. Co., 183 Pa. 504; Keatley v. Travelers' Ins. Co., 187 Pa. 197.

There is nothing in either of the specifications of error that requires discussion. Neither of them is sustained.

Judgment affirmed.