# Horne v. John Hancock Mutual Life Insurance Company, Appellant.

*Insurance—Life insurance—Warranties—Statements as to health.*

1. Where the evidence is conflicting in an action on a policy of life insurance, whether or not the deceased was in good health at the time of the delivery of the policy, within the meaning of the terms of the policy, the case is for the jury to be determined by them under proper instructions from the court.

2. The term "good health" when used in a policy of life insurance means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. A mere temporary indisposition which does not tend to weaken, or undermine the constitution, at the time of taking membership, does not render the policy void.

3. Where an insured answers questions set forth in the application in a vague and indefinite way, and not responsive to the questions, but without affirmatively asserting anything false and untrue, and the company does not ask for more specific answers, and issues the policy to the applicant, the company cannot after the death of the insured avoid the policy because of the insufficient answers. The most that it can ask is to have a jury determine under proper instructions, whether or not the insured was guilty of a breach of the warranty contained in his application.

Argued Nov. 18, 1912. Appeal, No. 266, Oct. T., 1911, by defendant, from judgment of C. P. Delaware Co., March T., 1910, No. 145, on verdict for plaintiff in case of Jane B. Horne v. John Hancock Mutual Life Insurance Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit upon a policy of life insurance. Before BROOMALL, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $203.48. Defendant appealed.

*Error assigned* was in giving binding instructions for defendant.

*William I. Schaffer*, with him *Ira Jewell Williams*, for appellant.—It is error to submit an issue to the jury when there is not sufficient evidence to sustain it: Lonzer v. R. R. Co., 196 Pa. 610; Cromley v. R. R. Co., 211 Pa. 429.

The present case is almost parallel in its facts to the case of Gordon v. Prudential Ins. Co., 231 Pa. 404.

The acceptance of a policy makes operative the warranties therein contained, which are signed by the insured, and settles the question of their materiality: Stewart v. Ins. Co., 35 Pa. Superior Ct. 120; Cable v. U. S. Life Ins. Co., 111 Fed. Repr. 19; Thompson v. Travelers' Ins. Co., 13 N. D. 444 (101 N. W. Repr. 900).

*William C. Alexander*, with him *Frank S. Morris*, for appellee.—Viewing the answers of the application in the strongest light possible, the most that can be said of it, is that the answers are indefinite and ambiguous: Lebanon Mut. Ins. Co. v. Kepler, 106 Pa. 28; Meyers v. Ins. Co., 156 Pa. 420.

The burden is on an insurance company to show that representations of the insured were false: Maryland Casualty Company v. Gehrman, 96 Md. 634 (54 Atl. Repr. 678).

The question as to whether the assured was in sound health when the policy was delivered was for the jury: Dietz v. Insurance Company, 168 Pa. 504; McGraw v. Insurance Company, 5 Pa. Superior Ct. 488; Schwartz

v. Insurance Company, 5 Pa. Superior Ct. 285; Barnes
v. Life Association, 191 Pa. 618.

OPINION BY HEAD, J., April 21, 1913:

The single assignment of error complains of the refusal
by the learned trial judge to direct a verdict for the de-
fendant. The action was founded on a policy of insurance
on the life of William C. Horne, the husband of the plain-
tiff, who is the beneficiary named in that policy. It con-
tained the usual provision that it should not become ef-
fective until it had been actually delivered to the insured
and the first premium by him paid while in good health.
The first ground of defense was that this condition pre-
cedent had been broken, and as a consequence the policy
never went into force.

Giving to the plaintiff, as we must, the benefit of every
fact in his favor, supported by the testimony offered, the
case was briefly this: On January 16, 1910, the plaintiff
signed his application. He was engaged, among other
things, in the delivery of ice, driving and caring for his
own team. On the seventeenth he contracted a slight
cold for which he was treated by a physician, and from
this he promptly recovered. There was affirmative proof
on the part of the plaintiff to show that every day prior
to February 2 on which the policy was delivered, the
deceased had been engaged in his regular duties. Several
witnesses who saw him as late as Wednesday evening,
the day on which the policy was delivered, testified that
he had every appearance of being in good health with no
signs of any illness. His wife testified that the agent of
the company brought the policy to their home on the
evening of Wednesday, February 2, where it was delivered
in the presence of herself, her sister, and her husband.
The testimony on which the defendant largely relied was
that of Dr. Dooling, who called to see the deceased on the
afternoon of the same day on which the policy was deliv-
ered. He testifies that the deceased had a cold or grip
cold and that he saw him the next morning and found

him better, and that the pleurisy and congestion of the lungs, of which he died, did not develop until after Thurs‑ day morning.   He did not take to his bed, according to the testimony of his wife, until Thursday afternoon.   The progress of the fatal disease, after it did develop, was so rapid that he died on Friday evening.   Under these cir‑ cumstances we cannot avoid the conclusion that the question whether or not the deceased was in good health at the time of the delivery of the policy, within the mean‑ ing of its terms, was a question of fact to be determined by the jury under proper instructions from the court.   This question was fairly submitted in a charge, to which, in this respect, no complaint is made.   If authority be needed to support this proposition, it is at hand: Barnes v. The Fidelity Mutual Life Association, 191 Pa. 618, is almost identical in its facts with the case at bar.   The opinion of Mr. Justice Sterritt discusses at considerable length the meaning of the expression "good health" in cases of this character and clearly points out that under evidence of the kind there and here present, the question is one of fact for the jury.   He says: "In other words, the term 'good health,' when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system.   A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy void." To the same effect is Dietz v. Metropolitan Life Insurance Co., 168 Pa. 504, in which Mr. Justice McCollum says, inter alia: "The condition of the health of the insured when the policy was issued was essentially and entirely a question of fact to be decided upon the evidence and involving the credibility of witnesses."   See also Schwartz v. Insurance Co., 5 Pa. Superior Ct. 285.   These cases and others that might be cited are ample authority for the conclusion that the learned trial judge could not, in the state of the evidence presented by this record, have prop-

erly done otherwise than submit the question to the jury. The verdict under the submission resolves the fact against the contention of the defendant.

It is further urged upon us that the court should have declared, as matter of law, that the applicant in his application, which was a warranty of the truth of the declarations therein contained, had made false answers, and that his policy was therefore avoided. The contention, in this respect, turned on the answers of the applicant to questions numbered in the application six, seven and eight. We quote them: "6. When and for what have you consulted a doctor, either at his office or elsewhere? A. As stated. 7. Have you within five years had any sickness, ailment, disease, injury or surgical operation? A. As stated. 8. When did you last consult a doctor and for what? A. Two weeks ago, slight cold." So far as the evidence shows, the answer to the eighth question was true in point of fact. The answers to the sixth and seventh are not self-explanatory. It is argued that they referred to the answer to the eighth question and practically incorporated it as the answer to the previous ones. In contradiction of this the defendant produced the evidence of a Dr. Johnston who testified that the deceased had consulted him about a year or more previous to his death and that he had then treated him for diabetes, and that this important fact should have been made known to the company by the applicant. It is not at all clear from an inspection of the application itself that the answers to the sixth and seventh questions quoted intended to refer to the statement made in the answer to the eighth question. The applicant may have therein referred to some oral statement made by him to the examining physician who drew up the application and certified to the soundness of the deceased at that time. Moreover, there is no conclusive certainty that the doctor was correct in his diagnosis that the deceased, at the time named, was actually suffering from that usually fatal disease. There does not appear in the evidence any trace of its continuance or existence

during the year that transpired between the date of his treatment and the signing of the application, nor is there the slightest evidence that his death and the acute illness which caused it were in any way traceable to such disease. As stated, the answers themselves in the application were, on their face, vague, indefinite, and incomplete. Or, as stated in some of the cases, they were manifestly not responsive to the questions which they purported to answer.

In Meyers v. Lebanon Mutual Insurance Co., 156 Pa. 420, the court had to deal with such an answer to a question in the application which had been signed by the insured. It is there said by Mr. Justice WILLIAMS: "It is evident that it (the answer) is not responsive. If a responsive answer was deemed important for the information of the company in order to enable its officers to determine whether to accept or refuse the application, it should have been returned in order that the needed answer might be given. It was not returned; but the risk was accepted upon the answer appearing in the application." In Lebanon Mut. Ins. Co. v. Kepler, 106 Pa. 28, Mr. Justice PAXSON says in a like case: "It may be that the answer is indefinite, and if the company had so regarded it they could have required a more specific answer. But they did not. They issued the policy, and the answer cannot now be treated as false within the meaning of that provision in the application which declares that the answers of the assured shall be a warranty. . . . There is an ambiguity, evidently the result of the ignorance of the assured, or possibly of an agent of the company in filling up the application. But the ambiguity being patent, the company should have asked for more specific information if they desired it, and cannot now avoid the policy for such cause." In the present case the answers to questions six and seven do not affirmatively assert, as facts, false and untrue statements. Just what they were intended to assert, no court could declare, as matter of law, without the aid of explanatory testimony. Under such circumstances the defendant could not fairly ask more than to

have the jury determine, under proper instructions, whether or not the applicant was guilty of a breach of the warranty contained in his application. The learned trial judge, in a painstaking charge in this respect, laid the entire question before the jury in the following language: "If you determine he was in good health (at the time the policy was delivered) then you proceed to the question of whether or not he had made true answers to the questions which the insurance company propounded to him. If they were not true, what he said about himself, if you find that it was not true, if he made any false statement, then the plaintiff is not entitled to recover. If, on the contrary, you find that what he did say about himself was true, although not as complete and full as the question propounded to him was intended to elicit. If you find, I repeat, that his answers were true but not so complete, and if the failure to get a complete answer was by reason of the fact, if it be a fact, that the insurance company did not propound the question over again and accepted his answer as full as they desired it, then this plaintiff is entitled to recover."

Upon neither branch of the case then, as we view it, could the learned trial judge have properly directed a verdict for the defendant. Some question is raised in the able brief of the appellant as to whether or not the burden in such cases is on the plaintiff to affirmatively prove that the deceased was in good health at the time of the delivery of the policy or whether the delivery of the policy by the company and the acceptance of the first premium was sufficient to make out a prima facie case and thus shift the burden of proof to the defendant. In the present case, inasmuch as the plaintiff accepted the burden and offered affirmative evidence, as part of her case in chief, that the deceased was in good health when the policy was delivered, we can see no practical importance in a discussion of that question. The assignments of error are overruled and the judgment is affirmed.