## McBride *v.* Sun Life Insurance Company of America, Appellant.

*Insurance—Life insurance—Warranties—Previous attendance by physician—Issue of fact—Case for jury.*

In an action of assumpsit on a policy of life insurance, the defense was that the insured had made false statements in his application with intent to defraud. Among them was the answer to the request to state the names of all physicians who had attended him within the last three years.

It appeared that the insured had made his application on February

22, 1922, and had averred that he never had consumption, was in good health, and had not consulted a physician within three years. He died August 31, 1922 of acute tuberculosis. It was also proven that the insured was a member of the Philadelphia City Fire Department, and had been so employed for four years. On January 16, 1922, and for several days following, he had developed a hoarseness, and had been referred to the Department physician and treated for a local cold.

Under such circumstances the case was for the jury on the questions of whether or not (1) he had consumption at the time of signing the application, and (2) whether such examination by the department physician constituted attendance by a physician within the meaning of the application.

A reasonable construction must be placed on the term, just as is given to the statement that the applicant is in "sound health" or "good health." In such case it does not mean absolute perfection of health, but only that the applicant has no grave, important or serious disease and is free from any ailment that seriously affects the general soundness and healthfulness of the system. Where the physician who was consulted is a city official, whose duty is to look after the health of the city employees, examine into their physical condition, and pass upon their ability to work, and it is shown that an employee under his general care, a healthy and robust looking man, not sick in bed or confined to the house, received from the doctor no prescription or internal medicine, but only a throat treatment, it was for the jury to find, and not for the Court to declare whether such treatment amounted to "attendance by a physician" within the common acceptation of the term.

Argued October 15, 1926. Appeal No. 187, October T., 1926, by defendant from judgment of C. P. No. 4, Philadelphia County, June T., 1924, No. 10,220, in the case of Mary A. McBride v. Sun Life Insurance Company of America. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ., Affirmed.

Assumpsit on policy of life insurance. Before FINLETTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,211.67, and judgment thereon. Defendant appealed.

*Error assigned,* was refusal of defendant's motion for judgment non obstante veredicto.

*Arthur G. Dickson,* for appellant.—The false statements in insured's application for the policy were made with actual intent to deceive, and materially affected the defendant's judgment in the issuance of the policy McEntee v. New York Life Insurance Company, 79 Pa. Superior Court, 457; Mengel v. Insurance Co. 176 Pa. 280; Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527; March v. Metropolitan Life Ins. Co., 186 Pa. 629; Rigby v. Metropolitan Life Ins. Co., 240 Pa. 332;

*Ralph S. Croskey,* for appellee, cited: Duncan et al. v. Pittsburgh-Florida Fruit Growers' Assn., 282 Pa. 498, 504; Baeder, Adamson Co. v. F. W. Tunnell & Co., Inc., 285 Pa. 356, 361; Suravitz v. Prudential Insurance Company, 244 Pa. 582, 587, 588; Feinberg v. N. Y. Life Ins. Co., 256 Pa. 61, 66; Feierman v. Eureka Life Insurance Company, 279 Pa. 507, 508, 509.

OPINION BY KELLER, J., March 3, 1927:

This was an action of assumpsit on a life insurance policy. The application for insurance contained certain questions, which were answered by the applicant— (Archibald McBride, the insured)—, as follows: "(8) Have you ever had consumption? *No.* (9) Give names of all physicians who have attended you within the past three years; on what dates and for what complaints? *None.* (10) Are you now in good health? *Yes.*" The policy contained the following provision, "STATEMENTS NOT WARRANTIES. The falsity of any statement in the Application for this Policy shall not affect the validity thereof, unless such false statement was made with actual intent to deceive, or materially affected the Company's judgment in deter-

mining upon the issuance of or rate of premium for this Policy, as relating to the health, condition and antecedents of the insured.'' The Company admitted the execution of the policy, the death of the insured and the receipt of sufficient proofs of death, but defended on the ground (1) that the above quoted statements in the application were false; (2) that they were made with actual intent to deceive; and (3) that they materially affected the Company's judgment in determining upon the issuance of the policy. The learned trial judge refused defendant's point for binding instructions, but left the disputed questions of fact to the jury in a charge to which defendant took no exception, except to the refusal of binding instructions. In other words, the jury found that the insured (1) had not had consumption prior to signing the application for insurance on February 22, 1922; (2) had not been attended by a physician, within the meaning of the application, within three years; and (3) was in good health when the application was signed. If there was any evidence to support these findings we must affirm the judgment.

That there was evidence in the case which would have justified a verdict in favor of the defendant cannot be questioned; for it cannot be doubted that the statements were material to the issuance of the policy: Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527, 530; Rigby v. Metropolitan Life Ins. Co., 240 Pa. 332, 336. The insured was a member of the Philadelphia City fire department and had been so employed for four years. He was examined for insurance on February 22, 1922, and died on August 31 of that year, of acute tuberculosis. There was testimony that the surgeon of the Philadelphia fire department had treated him for an infected finger on January 16, 1922 and for several days following, and finding that he had developed a hoarseness referred him to the nose and

throat specialist of the department; that the latter treated him several times and thinking the hoarseness might be caused by a small growth on the vocal cord, sent him to the fire department ward of the Philadelphia Hospital for examination, where an X-ray picture was taken of his throat and chest on January 28, 1922. He reported to the department's nose and throat specialist four times in February, three of which were before the 22nd. This physician testified that he diagnosed the insured's condition as a "probable tuberculous condition of the larynx, secondary to a chest condition"; but admitted that he did not so inform the insured. The Roentgenologist, who took the X-ray photograph of McBride, testified that from the picture his diagnosis was "extensive pulmonary tuberculosis"; but that he made no report of such diagnosis to McBride.

On the other hand, the testimony was general that the insured had the appearance of a healthy, hearty, robust man up until a very short time before his death, and showed none of the usual symptoms of consumption or tuberculosis until at least three or four months after securing the insurance. He had no cough, spit no blood, and appeared to be in good physical condition. This was competent and relevant testimony: Smith v. Metropolitan Life Ins. Co., 183 Pa. 504, 507; Billings v. Metropolitan Life Ins. Co., 70 Vt. 477, 41 Atl. 516. The insured's own doctor or family physician testified that death was due to an active acute form of tuberculosis of the lungs, which superinduced a tuberculosis of the larynx; that he so diagnosed the case in the latter part of July, 1922, about four weeks before the insured died and notified the surgeon of the fire department that McBride ought not to work; that in his judgment the tuberculosis had not developed for longer than three or four weeks before that date; and that the X-ray does not show tuberculosis—his

own words being, "Your Honor, there is no picture of
tuberculosis. There is no X-ray picture of any such
thing. ....... You cannot have a picture of positive
tuberculosis of the lungs, depending upon the picture
itself, unless it is strengthened by clinical symptoms."
It was further testified that this physician had devoted
a good deal of his time to tuberculosis and had written
a pamphlet on the subject. It was also shown, as
bearing on the testimony of the department's physi-
cians and surgeons, that notwithstanding their alleged
diagnosis of a probable tuberculous condition in
January, 1922, they had returned McBride to active
duty on February 6, 1922. It seems almost incredible,
and was proper for a jury to consider, that physicians
who believed a man was suffering from tuberculosis
of the lungs and larynx, would send him back to active
duty as a fireman, subject to the strain and exposure
of such an occupation, and permit him to sleep in the
same bed with his fellow employees, subjecting them
to possible risk of infection, and him to an exertion
and effort that he ought to have avoided, if in such a
condition of health. It was not alleged that the in-
sured was confined to his bed from illness during any
portion of January or February, 1922; or that either
the surgeon or throat specialist of the fire department
gave him any medicine or prescribed for his alleged
condition. Their treatment was confined to dressing
his finger from January 16th to the 23d, and there-
after the usual application of antiseptics to the throat
and spraying it with healing oils, such as is admin-
istered for an ordinary cold in the head or inflamed
larynx. In addition, we have the undisputed fact that
defendant's own doctor after an examination which the
company impressed upon him should be made with
care, and with emphasis laid on examination of the
nose, throat, mouth and lungs reported to the defend-
ant that he found no indication of disease of the re-
spiratory organs, that the applicant was in good health,

a first class risk, and with nothing to render the risk in any way undesirable.

We are of opinion that the evidence as a whole raised a disputed question of fact as to whether the insured was in good health on February 22, 1922, or was suffering from tuberculosis, the solution of which was for the jury, and will not be disturbed by us.

We are likewise of opinion that in the circumstances here detailed, it was for the jury, not the court, to decide whether the treatments which the insured received from the department surgeon and throat specialist amounted to being "attended by a physician," as ordinarily understood. They were physicians officially employed by the city, who were accustomed to examine employees of the fire and police departments as to their physical condition, and whose examinations and treatments of minor accidents and ailments were without charge and as a matter of course. One would scarcely contend that every dressing of an injured or infected finger, or every prescription for a cold, or treatment by a throat specialist could properly be classed as "attendance by a physician," when the patient shows no other signs of illness, or is not sick in bed or confined to the house. A reasonable construction must be placed on the term, just as is given to the statement that the applicant is in "sound health" or "good health": Horne v. John Hancock Mut. Life Ins. Co., 53 Pa. Superior Ct. 330, 333; Barnes v. Fidelity Mut. Life Assn., 191 Pa. 618, 623. In such case it does not mean absolute perfection of health, but only that the applicant has no grave, important or serious disease and is free from any ailment that seriously affects the general soundness and healthfulness of the system. The question here involved followed immediately after an inquiry as to whether the applicant had ever had any of a number of specified serious diseases. In some jurisdictions it is held that merely calling on a

physician, or being called on by him, because of a temporary indisposition, not serious in its nature and not affecting the person's sound bodily health is not being "attended" by a physician within the meaning of such word in an application for insurance: Plumb v. Penn Mut. Life Ins. Co., 108 Mich. 94, 99, 65 N. W. 611; Brown v. Metropolitan Life Ins. Co., 65 Mich. 306, 310, 32 N. W. 610; Billings v. Metropolitan Life Ins. Co., 70 Vt. 477, 41 Atl. 516. See also Gibson v. Am. Mut. Life Ins. Co., 37 N. Y. 580, 582. On the other hand, it is not in all cases necessary that the patient be "attended" at his home by the physician; he may be "attended" at the latter's office: White v. Provident Savings Life Assurance Soc., 163 Mass. 108, 116, 39 N. E. 771; Cushman v. U. S. Life Ins. Co., 70 N. Y. 72, 78. But where, as here, the physician is a city official whose duty is to look after the health of city employees, examine into their physical condition and pass upon their ability to work, and it is shown that an employee under his general care, a healthy and robust looking man, not sick in bed nor confined to the house, receives from the doctor no prescription or internal medicine, but only a throat treatment such as is given for an ordinary cold in the larynx, we think it is for the jury to find, and not for the court to declare as matter of law, whether such treatment amounts to "attendance by a physician," within the common acceptation of the term.

We are not convinced that the learned court below erred in refusing to enter judgment non obstante veredicto in favor of the defendant and the judgment is accordingly affirmed.