Adams *v.* Metropolitan Life Insurance Co., Appellant.

310

Argued November 12, 1935.

Before Keller,
P. J., Cunningham, Baldrige, Stadtfeld, Parker,
James and Rhodes, JJ.

*Harris C. Arnold,* with him *John A. Coyle,* for appellant.

*F. Lyman Windolph,* of *Windolph & Mueller,* for appellee.

OPINION BY STADTFELD, J., December 18, 1935:

This is an appeal from the judgment of the Court of Common Pleas of Lancaster County in a suit in assumpsit on a life insurance policy. The case was tried before the court and a jury, and resulted in a verdict for plaintiff for $1,073.50. The facts are succinctly stated in the opinion of the lower court by SCHAEFFER, J., from which we quote as follows: "The defendant has moved for judgment non obstante veredicto, claiming that defendant was entitled to binding instructions in

favor of the plaintiff only for the amount of the premiums, plus interest or $89.90. The defendant company has refused payment and defended on the ground of alleged misrepresentations in the application for insurance. The defendant had tendered to plaintiff $89.90 prior to the trial, representing the premiums paid and interest. The court submitted the case to the jury to find from the evidence whether Florence E. Adams, the insured, actually knew or had reason to believe that she suffered with a kidney condition, and whether the insured acted in good faith in her answers to the questions contained in the application for insurance. Florence E. Adams died July 26, 1933. The application was executed on November 5, 1931, and the policy was issued the same day. It stipulates that the questions and answers signed by the insured are wholly true and it is certified that the insured read the answers to the questions before signing and that they are correctly and fully set forth. At the time of the application for insurance the insured stated in the application that her health was good and that she was last sick on July 7, 1931, when she had a hemorrhoid removed by Dr. Atlee at the Lancaster General Hospital. She also stated that she had no physical or mental defect or infirmity and in answer to the question as to any prior surgical operation, serious illness or accident and the duration thereof, her answer was again hemorrhoid removed July 7, 1931—ten days. She also stated that she never had a disease of the kidneys. She stated that her usual medical attendant was Dr. F. G. Hartman. However, the eighteenth question in part B of the application and the answer thereto are stressed by defendant which are as follows: 'Q. Have you been attended by a physician during the last five years? If yes, give name of complaints, dates, how long sick and names of physicians. A. Hemorrhoid removed July 7/31, Dr. J. L. Atlee, ten days.'

"Florence E. Adams died of a heart condition. It appears that she suffered with a diseased kidney condition and had been attended and treated by Dr. F. G. Hartman for this disease prior to and after her application for insurance. Dr. Hartman, called as a witness by the defendant company, said that the deceased had suffered with nephritis or inflammation of the kidney which did not involve the destruction of the kidney as in Bright's disease. He testified that the inflammation cleared up at times and again recurred, requiring medical attention. The heart condition was not discovered until May, 1933. According to the testimony, Dr. Hartman withheld intentionally from Florence E. Adams, the insured, her kidney condition, and persistently concealed from her the true facts of her case through the course of her illness. He did so on account of the temperament and apprehensive state of mind of Florence E. Adams. She usually complained to Dr. Hartman about a headache or neuralgia. He attended her five times in August; once in September; three times in October; twice on November 1; twice on November 2 and once on November 3, 1931, preceding the application for the insurance. He said he attended her in 1931 approximately sixty times; in 1930 about twenty-five times; in 1929 twelves times and in 1928 eight times.

"The insurance policy provides that all statements made by the insured shall in the absence of fraud be deemed representations and not warranties. It is admitted that the instant case involves representations and not warranties."

The motion for judgment n. o. v. was overruled and judgment entered on the verdict and this appeal followed.

The application for insurance has two divisions, marked parts A and B, both of which were signed by Mrs. Adams. Above her signature on part A was this

statement: "It is understood and agreed: 1. That the foregoing statements and answers are correct and wholly true, and together with the answers on Part B hereof, they shall form the basis of the contract of insurance, if one be issued."

Above her signature on part B was the statement: "I hereby certify that I have read the answers to the questions in Part A hereof and to the questions in Part B hereof before signing, and that they have been correctly written, as given by me, and that they are full, true and complete, and that there are no exceptions to any such answers other than as stated herein."

Similar provisions in life insurance policies have been before the Appellate Courts of this State in numerous instances. Where a policy of insurance contains such clauses, the insurer, in order to avoid the policy, must prove that the statements made by the insured were knowingly false and fraudulent. In one of the latest cases, Stein v. New York Life Insurance Co., 319 Pa. 225, 179 A. 589, Mr. Justice DREW, delivering the opinion of the Supreme Court, affirming the judgment of this court, reported in 116 Pa. Supreme Ct. 109, said at p. 227: "The policy provides that 'all statements made by the insured shall, in the absence of fraud, be deemed representations, and not warranties.' Where the policy contains such a clause, the insurer, to avoid the policy, must prove fraud on the part of insured in the making of the statements (Livingood v. N. Y. Life Ins. Co., 287 Pa. 128; Kuhns v. N. Y. Life Ins. Co., 297 Pa. 418; Lilly v. Metropolitan Life Ins. Co., 318 Pa. 248); the insurer must show not only that the answers were false in fact but also that insured knew they were false when he made them: Lilly v. Meteropolitan Life Ins. Co., supra." See also Mellosky v. Eureka-Md. As. Corp., 93 Pa. Superior Ct. 314; Feinberg v. New York L. Ins. Co., 256

Pa. 61, 100 A. 538; Baer v. The State Life Insurance Co., 256 Pa. 177, 100 A. 745.

Where the evidence is conflicting in an action on a policy of life insurance, whether or not the deceased was in good health at the time of the delivery of the policy, within the meaning of the terms of the policy, the case is for the jury to be determined by them under proper instructions from the court: Horne v. John Hancock Mutual Life Insurance Co., 53 Pa. Superior Ct. 330. In that case, Judge HEAD, who wrote the opinion, quotes with approval the language of Mr. Chief Justice STERRETT in Barnes v. The Fidelity Mutual Life Association, 191 Pa. 618, 43 A. 341, on page 622: "In other words, the term 'good health,' when used in a policy of life insurance, means that the applicant has no grave, important or serious disease, and is free from any ailment that seriously affects the general soundness and healthfulness of the system. A mere temporary indisposition which does not tend to weaken or undermine the constitution at the time of taking membership does not render the policy void." To the same effect is Dietz v. Metropolitan Life Insurance Co., 168 Pa. 504, in which Mr. Justice McCOLLUM says, inter alia: "The condition of the health of the insured when the policy was issued was essentially and entirely a question of fact to be decided upon the evidence and involving the credibility of witnesses." Likewise in Livingood v. N. Y. Life Insurance Co., supra, it was stated by Mr. Justice SADLER, on page 131: "When the applicant asserts he is in good health, and reasonably believes this to be true, though in fact suffering from some insidious disorder, (tuberculosis) a recovery may be had."

Appellant lays stress on the answer to question No. 18 in the application referred to supra, as being palpably and knowingly false and that the undisputed testimony and admissions in the pleadings should have been

passed upon by the court without submission to the jury, to which the appellee contends that the answer was, on its face, not fully responsive to the question, and, although it was entirely true, it was not a complete or detailed answer to the question; and that even though the answer had been flatly untrue, the plaintiff's right of action would not have been defeated unless the answer had been fraudulent, that is, wilfully and deliberately untrue. A similar question was considered in Horne v. John Hancock Mutual Life Insurance Co., supra, wherein Mr. Justice HEAD said: "..... the answers themselves in the application were, on their face, vague, indefinite and incomplete. Or, as stated in some of the cases, they were manifestly not responsive to the questions which they purported to answer. In Meyers v. Lebanon Mutual Insurance Co., 156 Pa. 420, the court had to deal with such an answer to a question in the application which had been signed by the insured. It is there said by Mr. Justice WILLIAMS: 'It is evident that it (the answer) is not responsive. If a responsive answer was deemed important for the information of the company in order to enable its officers to determine whether to accept or refuse the application, it should have been returned in order that the needed answer might be given. It was not returned; but the risk was accepted upon the answer appearing in the application.' In Lebanon Mut. Ins. Co. v. Kepler, 106 Pa. 28, Mr. Justice PAXSON says in a like case: 'It may be that the answer is indefinite, and if the company had so regarded it they could have required a more specific answer. But they did not. They issued the policy, and the answer cannot now be treated as false within the meaning of the provision in the application which declares that the answers of the assured shall be a warranty." Likewise in Livingood v. New York Life Insurance Co., supra, Mr. Justice SADLER, speaking for the court said on p. 131: "But where the

misstatement has been set forth inadvertently, or the narrative is incomplete in detail, and was made without intention of concealing the truth, a recovery is permissible, the question of good faith being for the jury." Also McBride v. Sun Life Insurance Co., 90 Pa. Superior Ct. 35, our Brother KELLER said, at p. 41: "One would scarcely contend that every dressing of an injured or infected finger, or every prescription for a cold, or treatment by a throat specialist could properly be classed as 'attendance by a physician,' when the patient shows no other signs of illness, or is not sick in bed or confined to the house. A reasonable construction must be placed on the term, just as is given to the statement that the applicant is in 'sound health' or 'good health': Horne v. John Hancock Mut. Life Ins. Co., 53 Pa. Superior Ct. 330; Barnes v. Fidelity Mut. Life Assn., 191 Pa. 618, 623. ...... In some jurisdictions it is held that merely calling on a physician, or being called on by him, because of a temporary indisposition, not serious in its nature and not affecting the person's sound bodily health is not being 'attended' by a physician within the meaning of such word in an application for insurance: Plumb v. Penn Mut. Life Ins. Co., 108 Mich. 94, 99, 65 N. W. 611; Brown v. Metropolitan Life Ins. Co., 65 Mich. 306, 310, 32 N. W. 610; Billings v. Metropolitan Life Ins. Co., 70 Vt. 477, 41 Atl. 516. See also Gibson v. Am. Mut. Life Ins. Co., 37 N. Y. 580, 582."

In view of the fact that decedent's physician concealed from insured, her true condition, the trial court could not, as a matter of law have said that her answers to the questions were knowingly false and fraudulent. As stated by the learned judge in the opinion filed in this case: "The insured in her application stated that her usual medical attendant had been Dr. F. G. Hartman of Lancaster, Pa. Her answer to question eighteen was not necessarily untrue, but at the most incomplete

and unresponsive. The insurance company by reasonable diligence could have inquired of Dr. Hartman about the condition of Florence E. Adams' health and about his medical attendance of her. ...... In view of her lack of knowledge or her true condition of health or ailment and inasmuch as her complaints related chiefly to headaches and neuralgia, the question of her good faith and whether she deliberately withheld material information from the insurance company were properly submitted to the jury.

The cases cited are ample authority under the record in this case, to sustain the action of the lower court.

The assignments of error are overruled and judgment affirmed.